**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------x
MARGARET RATNER KUNSTLER, DEBORAH
HRBEK, JOHN GOETZ & CHARLES GLASS,

                Plaintiffs,                22-Civ-6913 (JGK)

         **-**  vs. **-**

CENTRAL INTELLIGENCE AGENCY, MICHAEL R.
POMPEO, DAVID MORALES GUILLEN
and UNDERCOVER GLOBAL S.L.,

                Defendants.
---------------------------------------------------------------------x

---

**MEMORANDUM OF LAW OF PLAINTIFFS**
**MARGARET RATNER KUNSTLER, DEBORAH HRBEK,**
**JOHN GOETZ AND CHARLES GLASS IN OPPOSITION**
**TO DEFENDANTS THE CENTRAL INTELLIGENCE AGENCY'S**
**AND MICHAEL R. POMPEO'S MOTION TO DISMISS THE COMPLAINT**

---

Dated:  June 7, 2023

                              THE ROTH LAW FIRM, PLLC
                              295 Madison Avenue, 22nd Floor
                              New York, New York 10017
                              Tel: (212) 542-8882
                              Email: rich@rrothlaw.com
                              Richard A. Roth, Esq.

# **TABLE OF CONTENTS**

**Preliminary Statement**................................................................................................1

**ARGUMENT** ...........................................................................................................3

**POINT I: STANDARD ON A MOTION TO DISMISS** ..................................................3

**POINT II: PLAINTIFFS HAVE STANDING** ...........................................................3

    A. Violations of Constitutional Rights Create Standing....................................................4

    B. Injunctive Relief Is Appropriate.............................................................................6

**III: PLAINTIFFS ALLEGED A VIOLATION OF FOURTH AMENDMENT RIGHTS**....9

    A. Plaintiffs Had a Reasonable Expectation the U.S. Government Would Not Seize
    Their Electronic Devices or Communications with Assange at the Ecuadorian
    Embassy ................................................................................................................9

        1. Plaintiff Sufficiently Alleged the Searches and Seizures Were
        Unreasonable.................................................................................................10

        2. There Were No Charges Publicly Filed Against Assange Prior to Plaintiffs
        Visits to the Embassy.....................................................................................12

    B. Plaintiffs Had a Reasonable Expectation That Their Electronic Devices, Phones
    and Laptops Would Not Be Searched and Seized by the U.S. Government ................... 13

    C. Defendants' Capture of Plaintiffs' Communications Was Not "Incidental" .............15

        1. Iqbal and Twombly are Distinguishable .........................................................17

        2. Plaintiffs Plausibly Alleged That the Searches and Seizures Were Controlled
        or Directed by the CIA....................................................................................17

**POINT IV: Defendant Michael Pompeo's Motion to Dismiss Should Be Denied**................19

    A. The Amended Complaint States a Cause of Action Under Bivens............................21

    B. Defendant Pompeo is Not Entitled to Qualified Immunity.........................................27

        1. Plaintiffs Adequately Alleged That Their Constitutional Rights Were
        Violated........................................................................................................27

2.  The Constitutional Rights at Issue Were Clearly Established at the Time of the Violation ........................................................................................................**29**

**POINT V:  Should This Court Find That the Complaint Does Not Plausibly Allege That the Defendants Violated Plaintiffs Fourth Amendment Rights, Leave to Amend Should Be Granted**................................................................................................**30**

A.  Recent Reporting in El Pais Establishes the CIA's Direction and Control Over UC Global .................................................................................................................**31**

B.  Pompeo's Memoir is Revealing and Relevant to Plaintiffs' Bivens Claim ................**32**

C.  Leave to Amend Should Be Granted ........................................................................**35**

**Conclusion** .........................................................................................................................**36**

# TABLE OF AUTHORITIES

## CASES

*American Civil Liberties Union v. Clapper*,
959 F.Supp.2d 724 (S.D.N.Y. 2013) ........................................................5, 7

*American Civil Liberties Union. v. Clapper*,
785 F.3d 787 (2d Cir. 2015) ..............................................................4, 5, 6

*Amidax Trading Group v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011) .....................................................................4

*Application of J.W. Schonfeld, Ltd.*,
460 F.Supp. 332 (E.D.Va 1978) ............................................................14

*Ashcroft v. Iqbal*,
556 U.S. 675 (2009) ...............................................................16, 19, 28

*Atlantic v. Twombly*,
550 U.S. 544 (2007) ..................................................................3, 16

*Bacon v. Phelps*,
961 F.3d 533 (2d Cir. 2020) ...................................................................27

*Bell v. Hood*,
327 U.S. 678 (1946) ..............................................................................19

*Bery v. City of New York*,
97 F.3d 689 (2d Cir.1996) .......................................................................6

*Best v. United States*,
184 F.2d 131 (1st Cir. 1950) ...................................................................9

*Bivens v. Six Unknown Federal Narcotics Agents*,
403 U.S. 388 (1971) .........................................................................18-26

*Brewer v. W. Irondequoit Cent. Sch. Dist.*,
212 F.3d 738 (2d Cir.2000) ..................................................................6-7

*Carlson v. Green*,
446 U.S. 14 (1980) ...............................................................................22

*Chambers v. Time Warner*,
282 F.3d 147 (2d Cir. 2002) ....................................................................1

*Clapper v. Amnesty Int'l USA*
568 U.S. 398, 133 S.Ct. 1138 (2013) ..........................................................................3

*Cohen v. United States*,
2022 WL 16925984 (S.D.N.Y. 2022) .......................................................................25

*Davis v. Passman*,
442 U.S. 228 (1979) ................................................................................................22

*Dodge v. County of Orange*,
282 F.Supp.2d 41 (S.D.N.Y. 2003) ...........................................................................6

*Doe v. Bridgeport Police Dept.*,
198 F.R.D. 325 (D.Conn.2001) ..................................................................................7

*E.E.O.C. v. Port Authority*,
768 F.3d 247 (2d Cir. 2014) .....................................................................................20

*Egbert v. Boule*,
142 S.Ct. 1793 (2022) ........................................................................................ 22-25

*Fazaga v. F.B.I.*,
965 F.3d 1015 (9th Cir. 2020) ............................................................................... 7-8

*Foman v. Davis*,
371 U.S. 178 (1962) ................................................................................................35

*Franks v. Delaware*,
438 U.S. 154 (1978) ................................................................................................15

*Gomez v. Toledo*,
446 U.S. 635, 100 S.Ct. 1920 (1980) ......................................................................15

*Guan v. Mayorkas*,
530 F.Supp.3d 237 (E.D.N.Y. 2021) ................................................................4, 7, 8

*Hayden v. Cnty. Of Nassau*,
180 F.3d 42 (2d Cir. 1999) ......................................................................................35

*Hernandez v. Mesa*,
140 S.Ct. 735 (2020) .......................................................................................... 23-25

*Hoeffner v. D'Amato*,
605 F.Supp.3d 467 (E.D.N.Y. 2022) .........................................................................8

*In re September 11 Property Damage and Business Loss Litigation*,
481 F.Supp.3d 253 (S.D.N.Y. 2007) ............................................14

*In re Terrorist Bombings*,
552 F.3d 157 (2d Cir. 2008) ............................................9, 26

*Janfeshan v. U.S. Customs Border Prot.*,
2017 WL 3972461 (E.D.N.Y. 2017) ............................................4-6

*Jolly v. Coughlin*,
76 F.3d 468 (2d Cir.1996) ............................................7

*Katz v. United States*,
389 U.S. 347 (1967) ............................................9

*Lujan v. Defenders of Wildlife*,
504 U.S 555 (1992) ............................................8

*Marbury v. Madison*,
1 Cranch 137 (1803) ............................................19

*Mancusi v. Deforte*,
392 U.S. 364, 88 S.Ct. 2120 (1968) ............................................9

*Mendez v. Macy*,
292 F.Supp. 802 (S.D.N.Y 1968) ............................................9

*Meshal v. Higgenbotham*,
804 F.3d 417 (D.C. Cir. 2015) ............................................22

*Milanese v. Rust Oleum Corp.*,
244 F.3d 104 (2d Cir. 2001) ............................................35

*Mitchell v. Cuomo*,
748 F.2d 804 (2d Cir.1984) ............................................6

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139, 130 S.Ct. 2743 (2010) ............................................4

*O'Connor v. Ortega*,
480 U.S. 709, 107 S.Ct., 1492 (1987) ............................................9

*Newberry v. County of San Bernadino*,
750 Fed.Appx. 534 (9th Cir. 2018) ............................................14

*Norman-Bloodshaw v. Lawrence Berkeley Laboratory*,
135 F.3d 1260 (9th Cir. 1998) ......................................................... 7-8

*Phillips v. United States*,
2021 WL 2587961 (C.D.Cal. 2021) ..................................................... 7-8

*Refco Group Ltd LLC v. Cantor Fitzgerald*,
2015 WL 4097927 (S.D.N.Y. 2015) ...................................................35

*Reid v. Covert*,
354 U.S. 1 (1957) ...........................................................................9

*Reid v. City of New York*,
2022 WL 2967359 (S.D.N.Y. 2022) ...................................................10

*Riley v. California*,
573 U.S. 373 (2014) ..............................................................11, 12, 29

*Rodriguez v. City of Springfield*,
127 F.R.D. 426 (D.Mass 1989) ........................................................14

*Spokeo v. Robins*,
136 S.Ct. 1540 (2016) ......................................................................4

*Statharos v. New York City Taxi and Limousine Comm'n*,
198 F.3d 317 (2d Cir.1999) ............................................................6, 8

*Stauber v. City of New York*,
2004 WL 1593870 (S.D.N.Y. 2004) .................................................6, 7

*Tancredi v. Malfitano*,
567 F.Sup. 2d 506 (S.D.N.Y. 2008) ...............................................10, 11

*Thomas v. Ashcroft*,
470 F.3d 491 (2d Cir. 2006) ...........................................................20

*United States v. Blair*,
366 F.Supp. 1036 (S.D.N.Y. 1973) ...................................................14

*United States v. Cook*,
2021 WL 6133280 (W.D.N.Y. 2021) .................................................10

*United States v. Hasbajrami*,
945 F.3d 641 (2d Cir. 2019) ....................................................10, 15, 16

*United States v. Lee*,
723 F.3d 134, 140 (2d Cir. 2013) ..............................................................29

*U.S. v. Mankani*,
738 F.2d 538 (2d Cir. 1984) ..............................................................9, 11

*United States v. Maturo*,
982 F.2d 57 (2d Cir. 1992) ..............................................................29

*United States v. Mazzara*,
2017 WL 4862793 (S.D.N.Y. 2017) ..............................................................11

*United States v. Toscanino*,
500 F.2d 267 (2d Cir. 1974) ..............................................................9, 26

*United States v. Verdugo–Urquidez*,
494 U.S. 259, 110 S.Ct. 1056 (1990) ..............................................................6, 26

*Wikimedia Foundation v. Nation Security Agency*,
857 F.3d 193 (4th Cir. 2017) ..............................................................4

*Williams v. Citigroup*,
659 F.3d 208 (2d Cir. 2011) ..............................................................35

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) ..............................................................21-23

## STATUTES

Fed. R. Civ. P. 12 ..............................................................2, 3

Fed. R. Crim. P. 41 ..............................................................15

## LAW REVIEW ARTICLES

*Letting Statutory Tails Wag Constitutional Dogs – Have the Bivens Dissenters Prevailed?*
George D. Brown, 64 Ind. L.J. 263, 265 (1989) ..............................................................26

*Searches and Seizures Abroad in the Federal Courts*,
Keith Raffel, Md. L. Rev 689, 709-712 (1979) ..............................................................9

## PRELIMINARY STATEMENT

By its motion, defendants the Central Intelligence Agency ("CIA") and Michael Pompeo ("Pompeo") continue to fail to recognize their obligations under the laws of this country and the requirements that state actors must comply with under the United States Constitution.  Indeed, Defendants appear to believe that they are above the law and cannot be held civilly liable for willfully violating the Constitutional rights of Plaintiffs, United States citizens. Defendants' apparent argument, that Plaintiffs no longer enjoyed constitutional rights when they visited Julian Assange, a target of the CIA, at the Ecuadorian Embassy, must be rejected.

Pompeo had made no secret of the fact that Assange was his obsession. In April 2017, in his first major speech as Director of the CIA, Pompeo stated "[i]t is time to call out WikiLeaks for what it really is, a non-state hostile intelligence service." Complt.[1] ¶ 24. Pompeo's vocabulary was unprecedented in its equating of journalists with terrorists.[2] At the conclusion of his remarks, Pompeo pledged that his office would embark upon a "long term" campaign against WikiLeaks. Complt. ¶ 26.

Not only were microphones and video surveillance planted to surveil Assange's meetings with visitors in the Embassy, but Pompeo's campaign against Assange included the downloading of the contents of mobile phones and laptops of Assange's attorneys, doctors, journalists, and other visitors, dismantled them and photographed SIM cards, IMEI codes. Complt., ¶¶ 36, 41, 47. Belying Defendants' argument that the surveillance of Plaintiffs was "incidental" to their surveillance of its actual target, Julian Assange, Defendants downloaded the contents of

---

[1] "Complt." refers to the First Amended Complaint filed on January 27, 2023 (ECF 27).

[2] In Never Give An Inch, Fighting for the American I Love, Pompeo identifies Assange as an "enemy." Id. at p. 123 et. seq.  On this motion to dismiss this Court can take judicial notice of Pompeo's public statements.  *Chambers v. Time Warner*, 282 F.3d 147, 152-153 (2d Cir. 2002).

Plaintiffs electronic devices after they identified themselves as American citizens and prior to meeting with Assange – a seizure separated in time and space from any "incidental" overhearing. Complt., ¶¶ 38-39. There are press reports, based upon judicial proceedings in Spain that verify that Assange's attorneys and other visitors were targets of the unconstitutional surveillance. Complt. ¶¶ 44-45[3]   Plaintiff attorneys Margaret Ratner Kunstler and Deborah Hrbek and journalists John Goetz and Charles Glass are American citizens who broke no law, who are suspected of no crime, and who have done nothing wrong. As U.S. citizens they have the constitutional right to be free from unreasonable searches and seizures by the U.S. government anywhere in the world.[4]

Plaintiffs have suffered a violation of their Fourth Amendment rights as they enjoyed a reasonable expectation of privacy that the U.S. government, as a party to the Vienna Convention, would not seize their information and property at a foreign embassy of a country that was providing sanctuary to a non-American subject. Further, the attorney Plaintiffs had a reasonable expectation that the U.S. government would not be surveilling their private meetings with their client, Julian Assange. Plaintiffs sufficiently pled the that the CIA and Pompeo were directing and controlling the unconstitutional searches and seizures of their electronic devices and

---

[3] See *Russian and US visitors, targets for the Spanish firm that spied on Julian Assange*, El Pais, Oct. 8, 2019, available at https://english.elpais.com/elpais/2019/10/04/inenglish/1570197052_180631.html (reporting "the priority targets [were] Americans, Russians, attorneys and journalists"). See Complt., ¶ 47. Documents that are integral to the Complaint may properly be considered on a Fed. R. Civ. P. 12(b)(6) motion.

[4] The Complaint alleges that the CIA surveilled Plaintiffs through the use of a private Spanish security company, defendant UC Global, that was recruited through the Las Vegas Sands, a casino linked to Republican party megadonor. Complt., ¶ 27-33. A similar operation reportedly conducted by the CIA through another Sheldon Adelson linked casino in Macau was reported on in 2015. https://campaignforaccountability.org/cia-allegedly-worked-with-macau-casinos-to-spy-on-china-read-the-report/.

communications with Assange at the Ecuadorian Embassy, and recent news reports have only confirmed the worst. Should this Court agree with the CIA and Pompeo that Plaintiffs have not sufficiently pled direction and control, the Plaintiffs respectfully request leave to amend to plead additional critical facts that have come to light in recent reporting, see Point V *infra.*

Pompeo's and the CIA's conduct violates Plaintiffs' constitutional right to be free from unreasonable searches and seizures by the United States government. It should be inviolate that the Constitution does not bend for any director of the CIA or any campaign the CIA embarks on against United States citizens, and that such a violation can only be addressed and remedied by a federal court. For the reasons discussed herein, Pompeo and the CIA's motion to dismiss must be denied. Defendants' actions herein are but a part of their overall scheme: they will use any means necessary – legal or illegal, constitutional or unconstitutional – to punish Assange and thereby discourage other journalists from exposing illegal activities by the United States government.

## ARGUMENT

### POINT I

### STANDARD ON A MOTION TO DISMISS

A motion to dismiss pursuant to Fed.R.Civ.P 12 (b)(6) must be denied where the allegations in the complaint, accepted as true, state a claim that is plausible on its face. *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  When evaluating the complaint's sufficiency, a court must draw all reasonable inferences in the plaintiff's favor.  *Id*.

### POINT II

### PLAINTIFFS HAVE STANDING

"Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable

3

by a favorable ruling." *American Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir.

2015)(citing *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 149, 130 S.Ct. 2743, 177

L.Ed.2d 461 (2010); *see also Clapper v. Amnesty Int'l,* 56 U.S. 398, 408, 133 S.Ct. 1138, 1147

(2013) (collecting cases). An injury in fact is defined as the invasion of a legally protected

interest that is concrete and particularized and actual or imminent.  *Wikimedia Foundation v.*

*Nation Security Agency*, 857 F.3d 193, 209 (4th Cir. 2017) (the "allegation that the NSA is

intercepting and copying communications suffices to show an invasion of a legally protected

interest – the Fourth Amendment right to be free from unreasonable searches and

seizures")(citing *Spokeo v. Robins,* 136 S.Ct. 1540, 1548 (2016).

A.      **Violation of Constitutional Rights Create Standing**

       Defendants' argument that Plaintiffs fail to have standing is off the mark. Plaintiffs have

standing based on the government's interception, copying and/or retention of records from an

unlawful search which, *per se,* constitutes an injury-in-fact "regardless of its effect of Plaintiffs."

*Guan v. Mayorkas*, 530 F.Supp.3d 237, 262 (E.D.N.Y. 2021); *Wikimedia Foundation* at 209. See

*Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) ("[t]o establish an

injury in fact . . . [plaintiff] need only establish that its information was obtained by the

government."). See also *A.C.L.U. v. Clapper*, 959 F.Supp.2d 724, 738 (S.D.N.Y. 2013) (standing

satisfied where "there [wa]s no dispute the government collected telephone metadata related to

[plaintiff's] telephone calls") *aff'd in part*, *vacated on other grounds, remanded*, 785 F.3d 787

(2d Cir. 2015) (holding at motion to dismiss stage that complaint challenging NSA's bulk

telephone metadata collection program established standing to assert a Fourth Amendment

violation where alleged injury was "collection, and maintenance in a government database");

*Janfeshan v. U.S. Customs Border Prot.*, 2017 WL 3972461, at *7 (E.D.N.Y. 2017) (injury in

fact based on the retention of records).

The holding in *American Civil Liberties Union v. Clapper*, 785 F.3d 787, 800-801 (2d Cir. 2015) ("*Clapper*") is dipositive. In *Clapper*, the government argued that plaintiffs lacked standing because they had not alleged any injury other than the initial unlawful search and seizure, which was insufficient in and of itself to create standing. *Id.*  In rejecting the government's argument, the Second Circuit affirmed the district court's ruling that plaintiffs had standing to sue:

> the government's argument misapprehends what is required to establish standing in a case such as this one. Appellants challenge the telephone metadata program as a whole, ***alleging injury from the very collection of their telephone metadata***. And, as the district court observed, it is not disputed that the government collected telephone metadata associated with the appellants' telephone calls. The Fourth Amendment protects against unreasonable searches *and seizures*. . . .Whether or not such claims prevail on the merits, [plaintiffs] surely have standing to allege injury from the collection, and maintenance in a government database, of records relating to them. If the telephone metadata program is unlawful, [plaintiffs] have suffered a concrete and particularized injury fairly traceable to the challenged program and redressable by a favorable ruling.

*Id*. at 801.

Here, as in *Clapper*, Plaintiffs have alleged injury from the collection of copies of their devices by the CIA and Pompeo. Complt., ¶¶ 35-39.  As in *Clapper*, if the CIA's program of seizing the contents of the electronic devices of any of Assange's visitors is unlawful (which it is), Plaintiffs have suffered a concrete and particularized injury. Complt., ¶¶ 35-39. And, as in *Clapper*, "[w]hether or not such claims prevail on the merits, [plaintiffs] surely have standing to allege injury from the collection, and maintenance in a government database, of records relating to them." *Clapper* at 801.

*Clapper* was followed and relied upon in *Janfeshan v. U.S. Customs and Border Protection*, 2017 WL 3972461 (E.D.N.Y. 2017), which is also squarely on point. In *Janfeshan*, the Court held that the plaintiff "has alleged a concrete, particularized injury stemming from the [unlawful] copying and retention of the digital contents of his phone." Id. at *7. The *Janefeshan*

Court rejected the identical argument made by CIA and Pompeo here, that *Janfeshan* "lack[ed] standing because he ha[d] not shown a threatened future injury that is certainly impending." In holding that the plaintiff had standing, the Court explained, that the plaintiff "'need not speculate' regarding any future injuries that the government might inflict[,] [r]ather, [plaintiff] ha[s] standing to allege injury from the collection, and maintenance in a government database, of records relating to [him]." *Id.* at 6 (internal citation omitted).

      Here, Plaintiffs have likewise alleged injury from the collection and maintenance of their information as a result of an unlawful search and seizure (Cmplt., ¶¶ 49-52) and 'need not speculate' regarding any future injuries that the government may inflict. *Janfeshan* at 7. Regardless, Plaintiffs have alleged ongoing injuries from Defendants' conduct. Cmplt., ¶¶ 49-50. See *Clapper* at 801 ("[A] violation of the [Fourth] Amendment is fully accomplished at the time of an unreasonable governmental intrusion.")(citing *United States v. Verdugo–Urquidez,* 494 U.S. 259, 264, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) (internal quotation marks omitted).

## B.    Injunctive Relief is Appropriate

      "The law is well-settled that plaintiffs establish irreparable harm through 'the allegation of fourth amendment violations.'" *Stauber v. City of New York*, 2004 WL 1593870 (S.D.N.Y. 2004) (citing *Doe v. Bridgeport Police Dept.,* 198 F.R.D. 325, 335 (D.Conn.2001) (quoting *Brewer v. W. Irondequoit Cent. Sch. Dist.,* 212 F.3d 738, 744 (2d Cir.2000)); *see also Dodge v. County of Orange*, 282 F.Supp.2d 41, 72 (S.D.N.Y. 2003)("The alleged violation of a constitutional right suffices to show irreparable harm."). See also *Statharos v. New York City Taxi and Limousine Comm'n,* 198 F.3d 317, 322 (2d Cir.1999) ("[b]ecause plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary", (citing *Bery v. City of New York,* 97 F.3d 689, 694 (2d Cir.1996)); *Mitchell v. Cuomo,* 748 F.2d 804, 806 (2d Cir.1984) ("When an alleged deprivation of a constitutional right is involved, most

courts hold that no further showing of irreparable injury is necessary."); *see also Jolly v. Coughlin,* 76 F.3d 468, 482 (2d Cir.1996) ("The district court ... properly relied on the presumption of irreparable injury that flows from a violation of constitutional rights."); *Brewer v. West Irondequoit Central Sch. Dist.,* 212 F.3d 738, 744 (2d Cir.2000) (Fourth Amendment violations have constituted irreparable harm); *Guan v. Mayorkas*, 2021 WL 1210285 at *16 (E.D.N.Y. 2021)("the retention of the information itself constitutes an injury regardless of its effect on Plaintiffs.")

Notwithstanding the "well-settled law" in the Second Circuit, Defendants argue that Plaintiffs have not pled irreparable harm because Plaintiffs have not alleged any steps the CIA might take against them with the unlawfully seized information.  ECF Doc. 35, Def. Brief at 11. Defendants principally rely on an out-of-circuit case, *Phillips v. United States*, 2021 WL 2587961, at * 8 (C.D.Cal. 2021) in support of their argument that Plaintiffs have not pled irreparable harm. Defendants are wrong for two reasons.

First, in the Second Circuit, "[t]he law is well-settled that plaintiffs establish irreparable harm through 'the allegation of fourth amendment violations.'" *Stauber v. City of New York*, 2004 WL 1593870 (S.D.N.Y. 2004)(citing *Doe v. Bridgeport Police Dept.,* 198 F.R.D. 325, 335 (D.Conn.2001) (quoting *Brewer v. W. Irondequoit Cent. Sch. Dist.,* 212 F.3d 738, 744 (2d Cir.2000)). Second, the case law cited in *Phillips*, including *Norman-Bloodshaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1275 (9th Cir. 1998) is clear that continued storage of records collected in violation of Fourth Amendment rights is sufficient for standing because continued storage is an "ongoing effect" of Defendants' conduct. Similarly, in *Fazaga v. F.B.I.*, 965 F.3d 1015,1054 (9th Cir. 2020), also cited in *Phillips*, specifically held, "expungement relief is available under the Constitution to remedy the alleged constitutional violations." Finally, *Guan*

*v. Mayorkas*, 2021 WL 1210295, *12-17 (E.D.N.Y. 2021), cited in *Phillips*, "held that the plaintiffs had plausibly alleged that the government's continued retention of information constituted an ongoing injury, and that expungement would 'eliminate the ongoing effects of the alleged constitutional violation.'" Critically, *Phillips* noted that since the *Guan* court was ruling on a motion to dismiss, the *Guan* court was not evaluating whether the evidence supported an ongoing injury.

Plaintiffs have plainly alleged irreparable harm from unlawful searches and seizures, sufficient to confer standing. *Statharos v. New York City Taxi and Limousine Comm'n,* 198 F.3d 317, 322 (2d Cir.1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary.").  In addition, Plaintiffs have alleged ongoing injury sufficient for standing from the "continued storage" of their information from devices and from private meetings with Assange. ¶¶ 49-50; *Guan v. Mayorkas*, 2021 WL 1210295, *12-17 (E.D.N.Y. 2021); *Norman-Bloodshaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1275 (9ᵗʰ Cir. 1998); *Fazaga v. F.B.I.*, 965 F.3d at 1054. Finally, although not required, Plaintiffs have alleged ongoing injury separate from the Fourth Amendment violations *per se*, and from the "continued storage" of the information by the CIA, including anxiety and disassociation by friends, clients and family members as a result of Defendants' unlawful search and seizure. Cmplt., ¶¶ 49-50. See *Hoeffner v. D'Amato*, 605 F.Supp.3d 467, 475 (E.D.N.Y. 2022)("at the motion-to-dismiss stage, 'general factual allegations of injury result from the defendant[s'] conduct may suffice.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S 555 561 (1992)).

## POINT III

## PLAINTIFFS ALLEGED A
## <u>VIOLATION OF FOURTH AMENDMENT RIGHTS</u>

**A.     Plaintiffs Had a Reasonable Expectation the U.S. Government Would Not Seize Their Electronic Devices or Communications with Assange at the Ecuadorian Embassy**

The Fourth Amendment protects U.S. citizens from unreasonable searches conducted by the U.S. government. *Katz v. United States*, 389 U.S. 347, 351 (1967). The Fourth Amendment right to be free from unreasonable searches and seizures extends to United States governmental action abroad. *In re Terrorist Bombings, supra.*, 552 F.3d 157, 167 (2d Cir. 2008) citing *United States v. Toscanino*, 500 F.2d 267, 280-81 (2d Cir. 1974); *Best v. United States*, 184 F.2d 131, 138 (1st Cir. 1950) cited with approval in *Reid v. Covert*, 354 U.S. 1, 9, n. 10 (1957)[5]; see *Mendez v. Macy*, 292 F.Supp. 802 (S.D.N.Y 1968).

In analyzing the constitutionality of a search and seizure, the Second Circuit held the government must demonstrate that: (1) the place where the intrusion occurred is one where the individual did not have a justified expectation of privacy; (2) the intrusion was not aided by mechanical or electronic means; and (3) the investigating officer was situated where an individual should anticipate that another person might have a right to be. See *U.S. v. Mankani*, 738 F.2d 538, 542-544 (2d Cir. 1984). A showing of an expectation of "absolute privacy" is not required. See *Mancusi v. Deforte*, 392 U.S. 364, 370, 88 S.Ct. 2120, 2124 (1968). The Fourth Amendment protects "privacy ... not solitude." *O'Connor v. Ortega*, 480 U.S. 709, 730, 107

---

[5] *Reid* referred only to the right of United States citizens to be free from such seizures abroad, but Fourth Amendment protections have been held applicable to aliens in certain situations. See *Searches and Seizures Abroad in the Federal Courts*, Keith Raffel, Md. L. Rev 689, 709-712 (1979).

S.Ct., 1492, 1504 (1987) (Scalia, J.)(opinion concurring in judgment). The identity of the searcher is relevant to whether search of a protected area is reasonable. *Id*.

"To determine whether a search is reasonable under the Fourth Amendment, we examine the totality of the circumstances to balance, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate government interests." *United States v. Hasbajrami*, 945 F.3d 641, 666 (2d Cir. 2019)(internal citation omitted).

**1. Plaintiffs Sufficiently Alleged the Searches and Seizures Were Unreasonable**

Here, Plaintiffs, U.S. citizens, reasonably expected that the United States government would not direct a foreign private security company in a foreign embassy in a foreign country to do its bidding, in an attempt to hide its conduct of illegal activities and evade constitutional obligations to Plaintiffs. Complt., p.1, ¶¶ 40-41.  Further, the attorney Plaintiffs, Kunstler and Hrbek, reasonably expected that the U.S. government would not invade attorney-client meetings, and the journalist Plaintiffs, Goetz and Glass, reasonably expected that that U.S. government would not invade a journalist's confidential sources. To the extent there is any factual basis for arguing U.S. citizens have no reasonable expectation privacy in a foreign embassy on foreign soil, this is an issue of fact that must be resolved at trial.

Defendants fail to cite any case to the contrary. *Reid v. City of New York*, 2022 WL 2967359 (S.D.N.Y. 2022), cited by Defendants, is easily distinguishable because it merely held there is no reasonable expectation of privacy for phone calls from prison. *Id*. at 19. However, even in *Reid,* there was an expectation that attorney-client communications were private.  *Reid* at *2 ("all calls, except for calls with your attorney . . . may be monitored"). Defendants' reliance on *Reid,* and other prison cases, *United States v. Cook*, 2021 WL 6133280 at *7 (W.D.N.Y.

2021) (police station interview room), and *Tancredi v. Malfitano*, 567 F.Sup. 2d 506, 509-512 (S.D.N.Y. 2008)(at the front desk of police headquarters) are off the mark, and generally baffling, given that Plaintiffs did not visit Assange at any police station.[6]  And with respect to the search and copying of the contents of the plaintiffs' electronic devices, the United States Supreme Court has held that the protections of the Fourth Amendment apply and any search of them must be supported by probable cause.  *Riley v. California*, 573 U.S. 373 (2014).

Defendants suggest that Plaintiffs should objectively assume they would be surveilled by the U.S. government in the Ecuadorian embassy in London because it is "a facility that houses ambassadors and other governmental officials, and maintains strict security protocols, located in a foreign country." Def. Brief, at p. 14.  Defendants cite no authority for this unprecedented claim. Defendants – without any cite whatsoever -- appear to be arguing that it is common knowledge that any visitor to a foreign embassy should assume the information on their devices will be copied, collected and stored by the CIA or that any private conversation in the embassy, including between attorneys and their client, will be recorded by the CIA through secret electronic surveillance devices. Defendants' attempt to equate a reasonable expectation that there may be "security cameras" in a foreign embassy, with secret electronic devices deployed by the United States to record private meetings known to be attended by U.S. citizens after their electronic devices had already been seized (Complt., ¶¶ 38-39), must be rejected. Def. Brief at

---

[6] In addition to police station cases, Defendants cite other irrelevant case law suggesting there is no reasonable expectation in a hospital or emergency room, *Tancredi v. Malfitano*, 567 F.Supp.2d 506, 509-512, a hotel with thin walls, *United States v. Mankani*, 738 F.2d 538, 545 (2d Cir. 1984), or on a public street, *United States v. Mazzara*, 2017 WL 4862793, at *9-12 (S.D.N.Y. 2017).

14-15.[7]  While it may be 'old hat' to the CIA and Pompeo that the U.S. government surveils its

citizens even within foreign embassies on foreign soil, Plaintiffs enjoyed a reasonable

expectation that this was not the case.

Defendants argue it is unreasonable for Plaintiffs to believe their meetings with Assange

were private because "the operational security of the facility" may include video cameras. Def.

Brief at 14-15. Whether or not there were security cameras in the embassy generally, Plaintiffs

reasonably believed that their conversations with Assange were private and the information on

their devices were being copied without authorization. Complt., ¶ 48. Defendants acknowledge

the same in their brief. Def. Brief at 16 ("Typically, warrant or other legal authorization is

required to search the contents of electronic devices." (citing *Riley v. California*, 573 U.S. at

401). There is no expectation that the contents of electronic devices would be copied by the U.S.

government as they would not have been brought since they could not be taken into the meetings

with Assange. There is no reason Plaintiffs would bring electronic devices to the embassy just to

have their contents seized by the U.S. government.

### 2. There Were No Charges Filed Against Assange Prior to Plaintiffs Visits to the Embassy

Finally, it must be stated that at the time of Plaintiffs to the Ecuadorian embassy, the U.S.

government had not filed any charges against Assange - at least not publicly - that would lead to

a diminished expectation of privacy.  A sealed indictment against Assange was filed on March 6,

---

[7] The Court must also reject Defendants' attempt to attribute the Complaint's recitation of surveillance operations occurring in the Ecuadorian Embassy as facts within Plaintiffs' knowledge prior to entering the Ecuadorian embassy.  The surveillance operations identified in the Complaint were only revealed and became known to Plaintiffs as a result of press reports of documents produced in discovery in a criminal proceeding in Spain some time *after* Defendants violated Plaintiff's Fourth Amendment rights. Def. Brief at 14.

2018 and remained sealed until April 11, 2019.[8] The Complaint alleges that Plaintiffs'

conversations with Assange and devices were searched and seized in January 2017 and March

2018, a time-period during which there either was no indictment against Assange or during a

time when the indictment was under seal. Complt. ¶ 36. Accordingly, during the time that

Plaintiffs visited Assange, they reasonably expected privacy as the U.S. government had not

publicly charged Assange with any crime.

Further, the unsealed and superseding indictment against Assange concerns conduct

occurring in March 2010. Indictment at ¶ 6.[9] As explained by Chief Justice Roberts:

> Prior to the digital age, law enforcement might have pursued a suspect for a brief
> stretch, but doing so for any extended period of time was difficult and costly and
> therefore rarely undertaken . . . . For that reason, society's expectation has been that
> law enforcement agents and others would not—and indeed, in the main, simply
> could not—secretly monitor and catalogue every single movement of an
> individual's car for a very long period. Id. at 2217.

Plaintiffs reasonably expected that their communications and devices would not be searched and

seized in 2017 over conduct that occurred in 2010 without any charges having been filed.

**B.      Plaintiff Had a Reasonable Expectation that Their Electronic Devices, Phones and
         Laptops Would Not Be Searched and Seized by the U.S. Government**

Pompeo and the CIA concede that Plaintiffs had a reasonable expectation of privacy with

respect to the contents of their electronic devices. Def. Brief, p. 16 *("Other than with respect to*

*the contents of the electronic devices, Plaintiffs lack a reasonable expectation of privacy").*

---

[8] Reporters Committee analysis of U.S. government indictment of Julian Assange, Apr. 12, 2019,
Reporters Committee For Freedom of the Press available at https://www.rcfp.org/reporters-
committee-analysis-of-u-s-government-indictment-of-julian-assange/.

[9] Unsealed Indictment of Julian Assange available at
https://www.theverge.com/2019/4/11/18306045/julian-assange-wikileaks-united-states-hacking-
arrest-indictment-conspiracy-secret-files

Nonetheless, Defendants argue the Plaintiffs failed to state a claim because they did not allege facts sufficient to demonstrate the searches and seizures of their electronic devices were unreasonable because Plaintiffs did not allege "that any of the actions in question were taken without a warrant or other legal authority." Def. Brief at 18. Defendants' argument must be rejected for two reasons.[10]

First, contrary to Defendant's argument, Plaintiffs' sufficiently alleged that the actions in question were taken without authorization. ¶ 36. Plaintiffs further alleged the governments' actions were unlawful (Complt., ¶¶ 55, 58), illegal (Complt., ¶¶ 27, 36, 39, 49) and unconstitutional (Complt., ¶ 49). See *United States v. Blair*, 366 F.Supp. 1036, 1039 (S.D.N.Y. 1973)("A search without a warrant is *per se* unreasonable and invalid unless it was conducted as an incident to a lawful arrest or under "exigent circumstances" which necessitate a search without a warrant.").

Second, contrary to Defendants' argument, it is unnecessary for Plaintiffs to plead the absence of a search warrant to state a claim for a violation of Fourth Amendment rights because the existence of a lawfully executed search warrant is an affirmative defense. *Newberry v. County of San Bernadino*, 750 Fed. Appx. 534, n. 2 (9th Cir. 2018) ("reasonable reliance on a warrant is an affirmative defense to Fourth Amendment liability premised on the objective reasonableness of officers' conduct"); see *Application of J.W. Schonfeld, Ltd.*, 460 F. Supp. 332,

_____

[10] Defendants' argument should be rejected for another reason. Defendants filed a pre-motion letter concerning purported deficiencies in the Complaint on Jan. 23, 2023 (ECF 23). The only deficiency identified in Defendants' pre-motion letter was the lack of a *Bivens* remedy against defendant Pompeo. ECF 23 at 2. Defendants' new argument that Plaintiffs failed to allege the absence of a search warrant could have easily been corrected in the First Amended Complaint as there was no search warrant in existence that Plaintiffs were aware of, nor any basis for obtaining a search warrant against Plaintiffs. Whereas, in this Circuit, leave to amend is normally granted where a motion to dismiss is granted, Plaintiffs should be provided the opportunity to amend in the event Defendants' motion is granted.

n. 12(E.D.Va 1978); *Rodriguez v. City of Springfield*, 127 F.R.D. 426, 432 (D.Mass 1989). As a matter of law, Plaintiffs are not required to allege facts to negate affirmative defenses. *In re September 11 Property Damage and Business Loss Litigation*, 481 F.Supp.3d 253, 258 (S.D.N.Y. 2007)("Defendants have the burden to plead the affirmative defense, by answer or by motion; the plaintiff is not required to allege facts to negate the affirmative defense".)(citing *Gomez v. Toledo,* 446 U.S. 635, 640–41, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

Plaintiffs plainly alleged the searches and seizures at the Ecuadorian embassy were unauthorized. Complt., ¶ 36. To the extent that Defendants had authorization, including a warrant, that is an affirmative defense that they may plead by answer or on a motion for summary judgment. Defendants failed to cite any authority that requires a plaintiff to allege facts negating a warrant when pleading a violation of Fourth Amendment rights. Nor could they, as a search may violate the Fourth Amendment despite the existence of a warrant, for example, where the search exceeds the scope of the warrant or where the warrant itself was not supported by probable cause or based upon an affidavit containing material and intentional misrepresentations. *Franks v. Delaware*, 438 U.S. 154 (1978). Plaintiffs have never been provided with a copy of any search warrant. Fed. R. Crim. Pro. 41. Accordingly, Defendants' motion to dismiss should be denied.

### C.   Defendants' Capture of Plaintiffs' Communications Was Not "Incidental"

Defendants argue that Plaintiffs' Fourth Amendment rights were not violated because any search or seizure of Plaintiff's communications and devices at the embassy were "incidental" to Defendants' targeting of a foreign individual, and therefore authorized. Def. Brief at 18-20. Defendants rely on *United States v. Hasbajrami*, 945 F.3d 641 (2d Cir. 2019) for their argument that the Complaint fails to state a claim because the "incidental" seizure of Plaintiffs'

15

communications with Assange, a possible foreign target, does not violate Fourth Amendment rights.[11] Def. Brief at 18-20. Defendants' argument is yet again, off the mark.

In *Hasbajrami*, the Court held that a U.S. citizen's Fourth Amendment rights were not violated when his emails were "incidentally" captured as part of a bulk collection of targeted foreign individuals' emails under section 702 of FISA. The *Hasbajrami* court explained:

> [under] the "incidental overhear doctrine" . . . law enforcement agents do not need to obtain a separate warrant to collect conversations of persons as to whom probable cause did not previously exist with individuals whose oral or wire communications are being collected through a lawful wiretap or bug, ***where those conversations on their face contain evidence of criminal activity***.

*Id*. at 663-664. However, the incidental overhear doctrine is inapplicable to Defendants' motion to dismiss because none of Plaintiffs' communications or conversations with Assange were "on their face…evidence of criminal activity." *Id*.

*Hasbajrami* is further distinguishable, and the incidental overhear doctrine does not apply in this case, because unlike in *Hasbajrami*, the Complaint plainly states that Pompeo and the CIA's violations of Plaintiff's Fourth Amendment violations were separated by time and space from any meeting with Assange – after Plaintiffs provided their passports identifying themselves as Americans upon entering the Embassy and prior to their meetings with Assange. Complt., p. 2; ¶¶ 36-37. There is absolutely *nothing incidental* about seizing their electronic devices – Plaintiffs were the target. Morales' CIA handlers instructed UC Global to pay particular attention

---

[11] By its terms, the statute at issue in *Hasbajrami*, section 702 of the Foreign Surveillance Act ("FISA") prohibits the intentional targeting of a U.S. person reasonably believed to be located outside the United States. 50 U.S.C.A. § 1881a(b)(3). This is the exact prohibited conduct the Complaint alleges that the CIA and Pompeo engaged in.

to lawyers and doctors, and American attorneys were included on the list of targets.[12] Complt., ¶ 36. Plaintiffs' meetings with Assange were likewise unlawfully surveilled with the knowledge that Plaintiffs were U.S. citizens and without any indication that criminal activity would occur.

### 1. *Iqbal* and *Twombly* are Distinguishable

Defendants rely on *Ashcroft v. Iqbal*, 556 U.S. 675 (2009) and *Atlantic v. Twombly*, 550 U.S. 544 (2007) to argue Plaintiffs failed to state a claim. Def. Brief, p. 21. In *Iqbal*, the plaintiff vaguely alleged discriminatory treatment without alleging any factual basis to support his claim. Similarly, in *Twombly*, the plaintiff vaguely alleged price fixing in violation of anti-trust laws without any allegation of actual agreement among competitors to raise prices in tandem.

Here, Plaintiffs have specifically pled factual allegations of who, what, when, where, and how their Fourth Amendment rights were violated. *See, e.g.* Cmplt, ¶¶ 25, 26,27 , 32, 36-39.  It is unclear what more Plaintiffs could allege as the basis for the violations of their Fourth Amendment rights. Plaintiffs are not required to plead allegations that negate any affirmative defense Defendants may have including the existence of a warrant.

### 2. Plaintiffs Plausibly Alleged that the Searches and Seizures Were Controlled or Directed by the CIA

Defendants ask the Court to dismiss the Complaint because Plaintiffs "do not allege specifically what the CIA purportedly requested or instructed, or what specific control or direction the agency exercised over UC Global's implementation of this supposed agreement." Def Brief at 24.[13] Contrary to Defendants' claim, Plaintiffs have plausibly alleged a sufficient

---

[12] *Russian and US Visitors, targets for the Spanish firm that spied on Julian Assange*, Oct. 8, 2019, El Pais, available at https://english.elpais.com/elpais/2019/10/04/inenglish/1570197052_180631.html.

[13] Pompeo and the CIA did not raise this argument in their pre-motion letter. ECF 23.

role for the CIA and Pompeo in directing or controlling the searches and seizures conducted by

co-defendants UC Global so as to implicate Fourth Amendment protection. The Complaint

specifically alleges that the CIA directed and controlled the Spanish Defendants' action at issue.

The Complaint alleges, among other things:

> In his April 2017 speech, Pompeo promised a long-term campaign against Wikileaks that would utilize counterintelligence techniques; (Complt., ¶¶ 21-26)

> At the January 2017 SHOT convention, LVS, acting on behalf of the CIA and defendant Pompeo, recruited defendants Morales and UC Global, the company providing security for the London Embassy of the government of Ecuador, to provide information on Julian Assange and his visitors (Complt., ¶¶ 29-30)

> Upon his return from the SHOT convention, defendant David Morales, the head of UC Global, told his employees that they were now working with the Americans, to wit, the CIA (Complt., ¶¶ 31-32)

> With the assistance of the CIA, UC Global made technological modifications at the Embassy to facilitate the surveillance and more easily transmit information to the CIA (Complt., ¶ 35)

> CIA and Defendant Pompeo, acting in his capacity as CIA Director, approved, and UC Global implemented, an extensive surveillance program which . . . (e) seized, dismantled, imaged, photographed and digitized the computers, laptops, mobile phones, recording devices and other electronics brought into the Embassy by the plaintiffs, including but not limited to  . . . downloaded stored material. . . the CIA emphasized to defendant the importance of surveilling and recording Assange's meetings with his American and European attorneys. (Complt., ¶ 36)

> UC Global, at the direction of, and as agents of, the CIA and defendant Pompeo, recorded conversations between and among Plaintiffs herein . . . to Morales' CIA handlers in the United States. (Complt., ¶ 39)

> The surveillance of Assange and his visitors was orchestrated by Defendant Pompeo . . . (Complt., ¶ 41)

> At all times Morales and UC Global were acting as agents of the Defendants CIA and Pompeo. (Complt., ¶ 42)

> [UC Global] copied the information stored on the devices. UC Global then provided that information to the Defendant United States Central Intelligence Agency ("CIA") then headed by Defendant Michael Pompeo. These actions were authorized and approved by Defendant Pompeo. (Cmplt, p. 2)

18

On September 26, 2019 news media in Spain reported that UC Global's surveillance activities at the Embassy were conducted in coordination with the CIA (Complt., ¶ 44)

Plaintiffs are not required to meet the burden demanded by the CIA and plead the specific details of the CIA's secret agreement with a foreign private security company. The Court cannot allow the CIA to violate U.S. citizens' Fourth Amendment rights simply because the details of their covert agreements are not specifically pled. Further, Defendants cite no authority for their claim that the Fourth Amendment does not apply when the CIA acts "in concert with, or obtain[s] the benefits of, cooperation with foreign actors." Def. Brief, p. 23.

## POINT IV

## DEFENDANT MICHAEL POMPEO'S MOTION TO DISMISS THE *BIVENS* CLAIM SHOULD BE DENIED

"The very essence of civil liberty consists of the right of every individual to claim the protection of the laws whenever he receives an injury." *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 397 (1971) quoting *Marbury v. Madison*, 1 Cranch 137, 163 (1803). Thus, where federally protected rights have been invaded "it has been the rule from the beginning that courts will be alert to adjust their remedies so as the grant the necessary relief." *Id.* at 393 quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946). The Bill of Rights "is particularly intended to vindicate the interests of the individual in the face of the popular will as expressed by legislative action." *Id.* at 407 (Harlan, J. concurring).

The Fourth Amendment to the United States Constitution guarantees to citizens "the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority." *Id.* at 392. Consistent with the foregoing principles, in *Bivens* the United States

Supreme Court recognized a cause of action rising directly under the Fourth Amendment for violations of the rights protected by its provisions. *Id*. at 397.

*Bivens* actions are the federal analog to suits brought against state officials under 42 U.S.C. § 1983. *Ashcroft v. Iqbal*, 556 U.S. 62, 675 (2009).  To be sustained the plaintiff in a *Bivens* complaint must allege facts that plausibly show that 1) the challenged action was attributable to an officer acting under color of federal law, and 2) such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution.  *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) citing *Bivens* at 389.  A "plausible" claim is one where "the plaintiff pleads factual content that allows a court to draw reasonable inferences that the defendant is liable or the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678.  In making that determination a court must accept facts alleged as true and draw all reasonable inferences in the plaintiff's favor.  *E.E.O.C. v. Port Authority*, 768 F.3d 247, 253 (2d Cir. 2014).

Plaintiffs' Fourth Amendment rights were violated by the actions of defendant Michael Pompeo. Upon his ascent to CIA Director in 2017, defendant Pompeo branded Wikileaks a "non-state hostile intelligence service" and its founder Julian Assange a "narcissist", "fraud" and "coward".  He promised a "long term" campaign against the organization and Assange individually.  According to defendant Pompeo the plan would include counterintelligence activities. Complt., ¶¶ 24-26.

Among the counterintelligence techniques authorized by defendant Pompeo was the surveillance of Julian Assange and his visitors.  Defendant UC Global provided security for the Ecuadorian Embassy in London where Assange had been granted asylum.  Complt., ¶¶ 27-28. Pompeo and others acting at his direction recruited defendant UC Global and its Chief Executive Officer, defendant David Morales, to participate in Pompeo's campaign by, *inter alia*, illegally

gathering information from those who visited Assange at the Ecuadorian Embassy. Complt., ¶30. Morales acknowledged to his employees that he was working for the CIA and providing information on Assange and his visitors to that agency for sums of money. Complt., ¶¶ 31-33.

Plaintiffs were among many who visited Assange while he was in the Embassy.  Complt., p. 2. Prior to each visit, Plaintiffs were required to surrender their electronic devices, including cell phones and computers to UC Global employees, ostensibly for safekeeping and for Assange's own protection.  *Id*. Unbeknownst to Plaintiffs, while they were meeting with Assange, the contents of their electronic devices were copied by UC Global employees.  *Id*. Those contents were then provided to the defendant CIA. Complt., ¶¶ 36-39.  Defendant Pompeo was aware of, and approved, the copying of information contained on Plaintiffs' electronic devices and audio recordings of their visits with Assange. Complt., ¶¶ 41-43. The CIA's participation in the unlawful seizures by US Global was disclosed in late 2019 during the criminal proceedings in Spain. Complt., ¶¶ 44-45.

## A.  The Amended Complaint States a Cause of Action Under *Bivens*

"A *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others. *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017). "The purpose of *Bivens* is to deter the *officer*." *Id.* In *Bivens* federal agents, acting without a warrant, entered the plaintiff's Brooklyn apartment.  They placed him in restraints and then searched the apartment from "stem to stern" *Bivens* at 389. Bivens ultimately brought and succeeded in a lawsuit against the agents participating in the search alleging a violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id.* at 389. The Supreme Court approved Bivens' claim against narcotics agents for handcuffing him in his own home and searching it without a warrant. *Id*. at 397.  Following *Bivens*, "the Supreme Court has taken a case-by-case approach in

determining whether to recognize a Bivens cause of action." *Meshal v. Higgenbotham*, 804 F.3d 417, 422 (D.C. Cir. 2015).

Relying primarily on two recent decisions of the United States Supreme Court, *Egbert v. Boule*, 142 S.Ct. 1793 (2022) and *Ziglar v. Abbasi*, *supra*., defendant Pompeo argues that dismissal is warranted because the allegations fail to state a cause of action under *Bivens*. (Def't. Br. p. 24-30).   However, the instant case falls well within the mainstream for which *Bivens* provided a remedy, therefore defendant Pompeo's motion should be denied.

To determine whether a case falls within *Bivens'* scope, a two-step inquiry is conducted. First, courts ask whether the case presents a new *Bivens* context. That "new" context must be "meaningfully" different from the three cases where the court has implied a damage action.[14] Second, if the case does present a new context a *Bivens* remedy is nonetheless available unless there are special factors indicating that Congress, and not the courts, should fashion a remedy. *Egbert v. Boule*, 142 S.Ct. at 1803.

The instant case does not present a new context.  The Complaint, as in *Bivens*, alleges a violation of the Fourth Amendment and illegal seizure of property.

In the instant case UC Global employees, acting without a warrant and at the direction of defendant Pompeo, violated the Fourth Amendment's prohibition against unlawful searches and seizures when they seized the plaintiffs' property by copying the contents of their electronic devices. Complt. ¶¶ 36-39.  That the defendants in *Bivens* were the agents who actually performed the search is not a "meaningful" difference.  The search and seizure herein would

---

[14] In addition to *Bivens* itself, which involved violations of the Fourth Amendment, the Supreme Court has implied a private cause of action for discrimination under the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979) and under the Eighth Amendment for the denial of adequate medical care, *Carlson v. Green*, 446 U.S. 14 (1980).

have never taken place absent defendant Pompeo's orders and murderous obsession with Assange.

Even if this Court finds any difference to be "meaningful" it should nonetheless uphold the *Bivens* cause of action.  There are no "special factors" counseling caution.  The government argues here that the courts in *Meshal v. Higgenbotham*, 804 F.3d 417, 424-425 (D.C. Cir. 2015); *Ziglar v. Abbasi*, 582 U.S. at 135-37; *Hernandez v. Mesa*, 140 S.Ct. 735 (2020) and *Egbert v. Boule*, 142 S.Ct. 1793 (2022) "squarely held" that matters involving foreign policy or national security are rarely proper subjects for judicial intervention. (Def't. Br.at p. 26-27.   These cases are easily distinguishable as they concerned terrorism, U.S. border enforcement, or foreign policy, matters that are not at issue here.

In *Higgenbotham*, the plaintiff, a suspected Al Qaeda terrorist, brought a *Bivens* claim concerning his detention as part of a criminal investigation into potential terrorism. The D.C. Circuit Court of Appeals held that the plaintiff's claim was a new "context" for a *Bivens* claim in that it involved "a criminal terrorism investigation conducted abroad" in which "U.S. officials attempted to seize and interrogate suspected Al Qaeda terrorists in a foreign country." *Id.* at 431. The Court did not permit the Bivens claim to proceed because the Complaint alleged a new context - "a criminal investigation into potential terrorism." *Id*. at 423-424.

In *Abbasi*, the plaintiffs, illegal aliens detained as part of investigations into the September 11, 2001 terrorist attacks brought a *Bivens* claim concerning the conditions of their confinement. The Supreme Court held that the plaintiffs' claim was a new "context" as it related to conditions of plaintiffs' confinement as illegal aliens detained "[i]n the weeks following the September 11, 2001, terrorist attacks – the worst in American history." *Id*. at 128. The Court rejected the plaintiffs' *Bivens* claim in this new context because permitting the claim to proceed

23

"would call into question the formulation and implementation of a general policy . . . [which] in turn, would necessarily require inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental actions being challenged." *Id* at 141.

In *Egbert v. Boule*, 142 S.Ct. 1793 (2022), the plaintiff was an inn-operator near the U.S.-Canada border who provided transportation and lodging to illegal border crossers. Id. at 1797. During an investigation into the plaintiff's conduct, a U.S. Border Patrol agent threw the plaintiff to the ground and Plaintiff brought a Bivens claim for "excessive use of force." The Supreme Court held that *Bivens* does not create a cause of action for a plaintiff's Fourth Amendment excessive force claim. *Id*. at 1797.

In *Hernandez v. Mesa*, 140 S.Ct. 735 (2020) the plaintiffs were the parents of a fifteen-year-old Mexican national who was shot and killed by a U.S. border patrol agent while allegedly making an illegal attempt at crossing the U.S.–Mexico border. The parents of the decedent brought a *Bivens* claim against the border patrol agent. The Supreme Court held this was a new context because the enforcement of the U.S. border with Mexico was an issue of foreign policy. Id. at 745. In addition, the Court was reluctant to regulate the conduct of agents at the U.S. border because such regulation by the Court risked undermining border security. *Id*. at 746.

In contrast, the Complaint in this action does not invoke or question any U.S. policy concerning the criminal investigation or detainment of terrorists. The complaint alleges a pre-mediated campaign by Pompeo to violate the Fourth Amendment rights of U.S. citizens on their entry into the Embassy, before they met with Assange, a journalist whom Pompeo despised. The Complaint does not raise any concerns about U.S. counter-terrorism, U.S. border control, or foreign policy. There is no allegation that any foreign government was involved in the Pompeo's conduct, and in fact, Ecuador, has issued a formal statement denying any knowledge of the

24

unlawful seizures. Complt., ¶ 41.  Moreover, there is no claim that classified information would be disclosed should the *Bivens* claim proceed.  UC Global's actions and the CIA's involvement in those actions have been disclosed in criminal proceedings in Spain and in the media. Complt., ¶¶ 44-45).

Simply put, none of the factors present in the cases relied on by Defendants, that counseled caution, are present here. Plaintiffs in this case are law abiding U.S. citizens who broke no law, are not suspected of any criminal activity, are not under investigation, and yet had their personal devices searched and seized by Pompeo and the CIA after they were known to be U.S. citizens.  Accordingly, all of Defendants' purported authority is distinguishable from *Hernandez, Higgenbotham*, *Abbasi*, and *Egbert*.

Defendants further argue that because Congress has created a purported "alternative remedial structure" through the CIA's Office of Inspector General a *Bivens* remedy should not be recognized Def. Br., p. 29-30.  That administrative process, however, provides no remedy for Plaintiffs.  Their personal and professional information has been seized.  It has no doubt been reviewed by government agents, including defendant Pompeo.   They are entitled to compensation.  That Plaintiffs have sought injunctive relief does not obviate the necessity for a *Bivens* damage remedy.  Should an injunction issue that requires the government to destroy the contents of the plaintiffs' devices the fact remains that the government agents who reviewed the material would still know and be able to access the illegally seized information.  "Some form of damages is the only possible remedy for someone in [Plaintiffs'] position." *Bivens* at 432 (Harlan, J. concurring).

Further, here, Plaintiffs' claims are against Mike Pompeo as the Director of the CIA.¶ 6. The Fourth Amendment violations alleged in the Complaint cannot be successfully remedied

through the CIA's Office of Inspector General ("OIG") because this CIA's website states that "OIG advances CIA's mission by offering findings and recommendations to the Agency, the *Director of the CIA*, and Congressional Intelligence Committees. When investigating alleged violations of law, OIG also works directly with CIA leadership, the *Department of Justice*, and other federal agencies." See CIA, *Organization – Office of Inspector General*, available at www.cia.gov/about/organization/inspector-general/ (last visited April 26, 2023) (emphasis added). "[I]t is hard to imagine that that the same individuals who committed the constitutional violations against [the plaintiff] would, in any meaningful sense, provide a remedy for those violations." *Cohen v. United States*, 2022 WL 16925984, *8 (S.D.N.Y. 2022). The Court need look no further than the fact that the Department of Justice is defending Pompeo in this action.

Further, any focus on remedies provided by statute is misplaced. "Unlike statutory rights, constitutional rights do not stem from Congress; there is no reason why the remedies for such rights must then stem from Congress, and much reason to think they need not." *Cohen v. United States*, 2022 WL 16925984, * 10 (S.D.N.Y. 2022). "The *Bivens* doctrine deals with judicial enforcement of rights whose origin is outside of, and hierarchically superior to, any statute." *Id.* (citing George D. Brown*, Letting Statutory Tails Wag Constitutional Dogs – Have the Bivens Dissenters Prevailed?*, 64 Ind. L.J. 263, 265 (1989).

Finally, that the unlawful search occurred outside the United States is not an extension of *Bivens*. It is "well-settled that the Bill of Rights has extraterritorial application to the conduct of federal agents directed against United States' citizens." *In re Terrorist Bombings, supra*., 552 F.3d 157 167 (2d Cir. 2008 quoting *United States v. Toscanino*, 500 F.2d 267, 280-81 (2d Cir. 1974), and citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 283, n.7 (1990) (Brennan, J. dissenting) (recognizing "the rule, accepted by every Court of Appeals to have considered the

question, that the Fourth Amendment applies to searches conducted by the United States

Government against United States citizens abroad.").  Each of the plaintiffs is a United States

citizen.  Accordingly, the protections of the Fourth Amendment apply.

**B.  Defendant Pompeo is Not Entitled to Qualified Immunity**

The qualified immunity analysis requires the court to ask two questions: "first, whether

the plaintiff [adequately alleged] that his constitutional rights were violated, and second, whether

the right at issue was 'clearly established' at the time of the alleged violation." *Bacon v. Phelps*,

961 F.3d 533, 542 (2d Cir. 2020). Here, Pompeo fails on both fronts as the Complaint sufficiently

alleges violations of Plaintiffs' Fourth Amendment rights and the law at the time of these

violations was clear.

**1. Plaintiffs Adequately Alleged that their Constitutional Rights Were Violated**

Defendants argue that Pompeo is entitled to qualified immunity because "Plaintiffs'

allegations of Pompeo's personal involvement in the alleged searches and seizures are too

conclusory to survive a motion to dismiss." (Def. Brief at 31). As previously shown in Section *

*supra*, Plaintiffs' allegations concerning Pompeo's personal involvement are more than sufficient

as the Complaint specifically alleges:

> In his April 2017 speech, Pompeo promised a long term campaign against
> Wikileaks that would utilize counterintelligence techniques; ¶¶ 21-26
>
> At the January 2017 SHOT convention LVS, acting on behalf of the CIA and
> defendant Pompeo, recruited UC Global the company providing security for the
> London Embassy of the government of Ecuador, to provide information on Julian
> Assange, his visitors ¶¶ 29-30
>
> Upon his return from the SHOT convention, defendant David Morales, the head of
> UC Global, told his employees that they were now working with the Americans, to
> wit, the CIA ¶¶ 31-32

With the assistance of the CIA, UC Global made technological improvements at the Embassy to facilitate the surveillance and more easily transmit information to the CIA ¶ 35

CIA and Defendant Pompeo, acting in his capacity as CIA Director, approved, and UC Global implemented, an extensive surveillance program which . . . (e) seized, dismantled, imaged, photographed and digitized the computers, laptops, mobile phones, recording devices and other electronics brought into the Embassy by the plaintiffs, including but not limited to  . . . downloaded stored material. . . the CIA emphasized to defendant the importance of surveilling and recording Assange's meetings with his American and European attorneys. ¶ 36.

UC Global, *at the direction of*, and as agents of, the CIA and defendant Pompeo, recorded conversations between and among Plaintiffs herein . . . to Morales' CIA handlers in the United States. ¶ 39.

The surveillance of Assange and his visitors was orchestrated by Defendant Pompeo . . . ¶ 41.

At all times Morales and UC Global were acting as agents of the Defendants CIA and Pompeo. ¶ 42.

[UC Global] copied the information stored on the devices. UC Global then provided that information to the Defendant United States Central Intelligence Agency ("CIA") then headed by Defendant Michael Pompeo. These actions were authorized and approved by Defendant Pompeo. Complt, p. 2.

On September 26, 2019 news media in Spain reported that UC Global's surveillance activities at the Embassy were conducted in coordination with the CIA ¶ 44

In *Iqbal*, the plaintiffs simply alleged that the defendants Ashcroft and Mueller created a policy that resulted in violations of constitutional rights of detainees.  But the complaint did not plausibly allege that they acted with invidious discrimination.  Unlike *Iqbal*, the instant complaint specifically and plausibly alleges violations of Plaintiffs' Fourth Amendment rights. In 2017, defendant Pompeo announced that he would be embarking upon a campaign to destroy Wikileaks (Complt., ¶¶ 21-26) and that this campaign would include utilization of counter-intelligence techniques.  According to employees of UC Global, at around the same time, defendant Morales told them that they were now working with the CIA and providing

information about Assange and his visitors to that agency. (Complt., ¶¶ 31-32).  This was confirmed by reports in the Spanish media arising from prosecutions in that country. (Complt., ¶¶ 44-45.  It is certainly "plausible", if not likely, that the unlawful searches of the plaintiffs' property were among the "counterintelligence" referred to by defendant Pompeo during his speech about Wikileaks.  The allegations in the complaint clearly support a plausible inference that defendant Pompeo was personally involved in the violations of the plaintiffs' Fourth Amendment rights. *Ashcroft v. Iqbal*, 556 U.S. at 678.

It is not significant that the actual search was performed by employees of UC Global. Where, as here, foreign officials act as the agents or virtual agents of United States law enforcement, constitutional procedures attach.  *United States v. Lee*, 723 F.3d 134, 140 (2d Cir. 2013 citing *United States v. Maturo*, 982 F.2d 57, 60-61 (2d Cir. 1992).  It is now known that the CIA provided written instructions for UC Global to provide them with direct access to the surveillance of Assange's meetings, and the complaint alleges UC Global entered into a contract with the CIA to provide information on Assange and his visitors to that agency. Complt., ¶¶ 27-35. The foregoing establishes sufficient personal involvement of defendant Pompeo and his motion to dismiss on that ground should be denied.

**2. The Constitutional Rights at Issue Were Clearly Established at the Time of the Violation**

The contours of the Fourth Amendment rights violated herein were clearly established. In *Riley v. California*, 573 U.S. 373 (2014) the Supreme Court squarely held that the protections of the Fourth Amendment apply to the data stored on cellular telephones and other electronic devices.  The acts complained of herein took place in 2017 and 2018.   Accordingly, there is no credible argument that Plaintiffs' constitutional rights were not clearly established at the time of the violations.

**POINT V**

**SHOULD THIS COURT FIND THAT THE COMPLAINT
DOES NOT PLAUSIBLY ALLEGE THAT THE
DEFENDANTS VIOLATED PLAINTIFFS' FOURTH
AMENDMENT RIGHTS, LEAVE TO AMEND
SHOULD BE GRANTED**

Defendants CIA and Pompeo argue that Plaintiffs did not plausibly allege a sufficient role for the CIA in directing and controlling the searches and seizures supposedly conducted by UC Global so as to implicate the Fourth Amendment. Def. Brief, at p. 22. Notwithstanding this argument, the Complaint sets forth sufficient, non-conclusory facts alleging that defendants Michael Pompeo and the CIA directed defendants Morales and UC Global in the unlawful seizure and copying of the information contained on Plaintiffs' electronic devices and other materials. (See Points III (3) and IV(B) (1)) *supra*.). However, should this Court find those pleadings insufficient, it is respectfully requested that the Court grant Plaintiffs leave to amend the Complaint to add relevant and critical allegations revealed in new reports published after the filing of Pompeo and the CIA's motion to dismiss on March 20, 2023.

These recent publications and news reports identify critical and previously unknown facts that if proven establish a sufficient role for the CIA in directing or controlling the searches and seizures by UC Global so as to implicate the Fourth Amendment. These publications include: (1) defendant Mike Pompeo's memoir, Never Give An Inch, Fighting for the American I Love, by Mike Pompeo, published Jan. 2023; (2) March 29, 2023 news article: *Spanish company provided CIA with information leading to Julian Assange's arrest* ("March 2023 Article")[15], (3) June 4, 2023 new article, *Police omitted folder called 'CIA' from the computer of Spaniard who*

---

[15] available at https://english.elpais.com/spain/2023-03-29/spanish-company-provided-cia-with-information-leading-to-julian-assanges-arrest.html;

*allegedly spied on Julian Assange*[16] ("June 2023 Article"); and (4) March 26, 2023 documentary

video, *Documental - Assange: cuatrao dias en los que el fundador de Wikileaks rozo la Libertad*

("March 2023 Documentary").[17]

**A.    Recent Reporting in El Pais[18] Establishes the CIA's Direction and Control Over UC Global**

The March 2023 Article and Documentary reports the details of Ecuador's plan to grant

Assange diplomatic status so that he could leave the Embassy and how the U.S. learned of and

stopped this plan *within hours* through surveillance of Assange at the Embassy. The June Article

reports on new evidence in a proceeding against defendant David Morales in Spain's High Court,

the Audencia Nacional that demonstrates defendants Morales and UC Global were working for the

CIA in connection with their surveillance operations at the Embassy.[19] The June Article reports

that among over 213 gigabytes of information on defendant Morales's laptop that was previously

withheld in the proceedings currently pending before the Spanish High Court is a folder called

"CIA" which contains a folder marked "Videos" which contains images of recordings of Assange

obtained via hidden cameras and microphones that UC Global installed in the Embassy. These

videos include meetings between Assange and the Ecuadoran consul who had arranged to secure

a diplomatic passport for Assange, as well videos of Assange meeting as the actress Pamela

---

[16] available at https://english.elpais.com/international/2023-06-04/police-omitted-folder-called-cia-from-the-computer-of-spaniard-who-allegedly-spied-on-julian-assange.html.

[17] available at https://www.youtube.com/watch?v=0Lx8k4GbxuY (last visited Jun. 2, 2023) ("*Documental – Assange*").

[18] El Pais is the newspaper of record in Spain. See https://www.theguardian.com/world/2014/mar/25/media-revolution-spain-readers-new-voices.

[19] https://english.elpais.com/international/2023-06-04/police-omitted-folder-called-cia-from-the-computer-of-spaniard-who-allegedly-spied-on-julian-assange.html?outputType=amp

Anderson. El Pais further reported that the video files were clearly prepared for a client – not for UC Global internal use. According to the June Article, the files had been transferred to a commercial format and renamed with reference to their contents, in order to make them more accessible to the final user. The June Article also reports that in the files contained on defendant Morales's laptop were emails from Morales in which he claimed to working for "the American client."

Further, Morales's own attorney recently admitted in a German television interview that UC Global had worked for the CIA, though he denied any connection with respect to the Ecuadorian Embassy.[20]

## B.   Pompeo's Memoir Is Revealing and Relevant the Plaintiffs' Bivens Claim

In Pompeo's recent memoir, published in January 2023, he shares that on December 23, 2017 he found himself sitting with his wife Susan and his son Nick, reading an unclassified summary of the U.S. government's rules and guidelines on extrajudicial killings.[21] Just two days earlier, the CIA had received real time video and audio recordings of a meeting between Julian Assange and his attorneys to discuss the recent news that the government of Ecuador had granted citizenship to Assange and had provided him with a diplomatic passport.[22] At that time, Assange

---

[20] *Who spied on Julian Assange?* NDR Panorama, Dec. 3, 2019, available at https://www.youtube.com/watch?v=qfWoIAsIn6Y

[21] Never Give An Inch, Fighting for the American I Love, by Mike Pompeo, published Jan. 2023, p. 227: "[o]n December 23, 2017, I was sitting with [wife] Susan and [son] Nick. We had gone to a site where it was easy for my CIA team to provide protection and still be home with their families for Christmas. I was reading an unclassified summary of the US government's rules and guidelines on extrajudicial killings—"

[22] *Documental - Assange: cuatrao dias en los que el fundador de Wikileaks rozo la Libertad* – El Pais, available at https://www.youtube.com/watch?v=0Lx8k4GbxuY at 00:21, 4:03-4:40 (last visited Jun. 2, 2023) ("*Documental – Assange*").

had been living as a political asylee in the Ecuadorian embassy in London ("Embassy") for five

years.[23] Now protected by his diplomatic status, the Ecuadorian plan under discussion was for

Assange to leave the Embassy on Christmas Day, December 25, 2017.[24] [25] As a diplomat to one

of several countries willing to accept him as a representative of the Ecuadorian government,

Assange would finally be able to live freely, putting an end to his extended period of *de facto*

house arrest. [26]

Pompeo learned of the Ecuadorian plan to confer diplomatic status upon Assange

immediately. This was possible because, unbeknownst to Assange and his counsel, the CIA was

capturing their conversation in real time.[27] Spanish defendant Undercover Global ("UC Global")

had been under contract with the Ecuadorian government to provide security at the Embassy

since 2012.[28] After recruiting its CEO, defendant David Morales, in 2017, the CIA provided UC

Global with written instructions in perfect English that Morales sent to his employees directly

---

[23] *Id*. In <u>Never Give An Inch, Fight for the America I Love</u>, Pompeo refers to Assange's
accommodations at the Ecuadorian embassy as "pathetic.' Id. at 123 et. seq.

[24] *Documental Assange* at 12:30.

[25] *Spanish company provided CIA with information leading to Julian Assange's arrest,* Mar. 29,
2023, El Pais, available at https://english.elpais.com/spain/2023-03-29/spanish-company-
provided-cia-with-information-leading-to-julian-assanges-arrest.html.

[26] *Spanish company provided CIA with information leading to Julian Assange's arrest,* Mar. 29,
2023, El Pais, available at https://english.elpais.com/spain/2023-03-29/spanish-company-
provided-cia-with-information-leading-to-julian-assanges-arrest.html.

[27] *Documental – Assange* at 5:15-6:30; 7:13-7:30; 12:00-14:30; *Spanish company provided CIA
with information leading to Julian Assange's arrest,* Mar. 29, 2023, El Pais, available at
https://english.elpais.com/spain/2023-03-29/spanish-company-provided-cia-with-information-
leading-to-julian-assanges-arrest.html.

[28] *Documental Assange* at 5:10-5:30.

from The Venetian Hotel, owned by LVS.[29] Complt., ¶¶ 32-33. As a result of UC Global following their instructions for the installation of enhanced surveillance devices, the CIA had 24/7 remote access to the Embassy via an FTP server.[30]

Within hours of illegally eavesdropping on the attorney-client meeting, the United States issued an international warrant for the Assange's arrest.[31] The following day, December 22, 2017, the American Ambassador to Ecuador met with the Ecuadorian foreign minister to make it known that Ecuador's plan to remove Assange from the Embassy would be scuttled because the UK would not acknowledge or accept Assange's diplomatic status.[32] As related above, just one day later, on December 23, 2017, the head of the CIA sat with his family perusing a government document about extrajudicial killings, possibly contemplating the murder of Julian Assange.[33] Shortly thereafter, the Madrid offices of the Assange attorneys who had been present at the

---

[29] *Documental Assange* at 8:50-10:00; Complt., ¶¶ 35-40.

[30] Complt., ¶ 39.

[31] *Documental Assange* at 12:00-14:30.

[32] *Documental Assange* at 12:00-14:30; *Spanish company provided CIA with information leading to Julian Assange's arrest,* Mar. 29, 2023, El Pais, available at https://english.elpais.com/spain/2023-03-29/spanish-company-provided-cia-with-information-leading-to-julian-assanges-arrest.html.

[33] Never Give An Inch, Fighting for the American I Love, by Mike Pompeo, published Jan. 2023, p. 227; see also Kidnapping, assassination and a London shoot-out: Inside the CIA's secret war plans against Wikileaks, Sept. 26, 2021, Yahoo News available at https://news.yahoo.com/kidnapping-assassination-and-a-london-shoot-out-inside-the-ci-as-secret-war-plans-against-wiki-leaks-090057786.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAK8zBDQNjNazHrfcIR6vyBn5MCbLyeyAazVhv9NLdPAjAzFoIHmC5hYyahhobfA1UjzGqQEpwsQjy5HVfu8lJR0172AQoAQjTIGQQYvRlyhJ4K51qBORuYw0WFFQK0RokDqZunLBCQH6e7u3BQkOrI-5BF9K1V9ZcM631vC9mLbXBgBAC ("Some senior officials inside the CIA and the Trump administration even discussed killing Assange, going to far as to request 'sketches' or 'options' for how to assassinate him.").

December 21 meeting were burglarized.[34] The offenders, who were never pursued let alone arrested, ransacked the office but did not take the cash that was kept there.[35]

      Belying Defendants' argument that the surveillance of Plaintiffs was "incidental" to their surveillance of its actual target, Julian Assange, there are numerous press reports detailing the campaign and directions by the CIA to UC Global to "target" lawyers and doctors who were visiting from the United States.[36] Indeed, American lawyers meeting with Assange were found on a list of identified targets for surveillance.[37]

**C.**    **Leave to Amend Should be Granted**

      A motion to amend should be freely granted when justice so requires.  Fed.R.Civ.P. 15(a)(2); *Hayden v. Cnty. Of Nassau*, 180 F,3d 42, 53 (2d Cir. 1999).  This is so because there is a strong preference for resolving cases on the merits.  *Williams v. Citigroup*, 659 F.3d 208 (2d Cir. 2011).  Such a motion should be denied only where there is evidence of undue delay, bad faith, undue prejudice to the non-movant or futility." *Milanese v. Rust Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001), citing *Foman v. Davis*, 371 U.S. 178 (1962).   Motions to amend are regularly granted to permit a party to add facts learned through discovery. *Refco Group Ltd LLC v. Cantor Fitzgerald*, 2015 WL 4097927 *26 (S.D.N.Y. 2015).

---

[34] *Documental Assange* at 7:30-8:50; *Spanish company provided CIA with information leading to Julian Assange's arrest,* Mar. 29, 2023, El Pais, available at https://english.elpais.com/spain/2023-03-29/spanish-company-provided-cia-with-information-leading-to-julian-assanges-arrest.html.

[35] *Id.*

[36] *Russian and US Visitors, targets for the Spanish firm that spied on Julian Assange*, Oct. 8, 2019, El Pais, available at https://english.elpais.com/elpais/2019/10/04/inenglish/1570197052_180631.html; Complt., ¶ 21, 26-27.

[37] *Id.*

To the extent the basis for granting Defendants' motion to dismiss is the failure to plausibly plead that UC Global's searches and seizures were "directed or controlled" by the CIA, leave to amend should be granted to allege the newly reported facts identified herein.  There can be no claim of bad faith or delay.  The government will not be prejudiced as this case is in its earliest stages.  Nor can the amendment be considered futile as it goes to the heart of the case: UC Global's relationship with the CIA.

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs respectfully requests this Court deny the Motion to Dismiss in its entirety.

Dated:  June 7, 2023

THE ROTH LAW FIRM, PLLC

By: _____
     Richard A. Roth, Esq.
     295 Madison Avenue, 22nd Fl.
     New York, New York 10017
     Tel: 212-542-8882
     Email: rich@rrothlaw.com

36

CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this brief complies with the word limits and formatting rules in Section II.D of this Court's Individual Practices, as amended by the Court's order of March 16, 2023. ECF No. 33. As measured by the word processing system used to prepare this brief, there are 10,940 words in this brief.

THE ROTH LAW FIRM, PLLC

By: /s/ Richard A. Roth
Richard A. Roth