**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARGARET RATNER KUNSTLER,
DEBORAH HRBEK, JOHN GOETZ and
CHARLES GLASS,

                Plaintiffs,

       v.

CENTRAL INTELLIGENCE AGENCY,
MICHAEL R. POMPEO, DAVID
MORALES GUILLEN and UNDERCOVER
GLOBAL S.L.,

                Defendants.

No. 22 Civ. 6913 (JGK)

---

**MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S**
**MOTION TO DISMISS PLAINTIFFS' REMAINING CLAIM BASED ON**
**THE STATE SECRETS PRIVILEGE AND STATUTORY PRIVILEGES**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street
New York, New York 10007
Tel. (212) 637-2679/2709
Email Jean-David.Barnea@usdoj.gov
      Sarah.Normand@usdoj.gov

JEAN-DAVID BARNEA
SARAH S. NORMAND
Assistant United States Attorneys
   - Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

    A.  Relevant Background .................................................................................................. 3

    B.  The CIA Director's Assertions of the State Secrets and Statutory Privileges.................. 4

ARGUMENT...................................................................................................................... 6

I.   THE COURT SHOULD UPHOLD THE CIA DIRECTOR'S ASSERTION OF THE
    STATE SECRETS PRIVILEGE AND DISMISS PLAINTIFFS' REMAINING CLAIM
    ON THAT BASIS .......................................................................................................... 6

    A.  The State Secrets Privilege .......................................................................................... 6

    B.  The Government Has Properly Invoked the State Secrets Privilege ............................... 8

    C.  Application of the State Secrets Privilege Requires Dismissal of Plaintiffs'
        Remaining Claim .................................................................................................... 12

II.  THE INFORMATION AT ISSUE IS ALSO SUBJECT TO THE CIA'S STATUTORY
    PRIVILEGES ............................................................................................................... 15

CONCLUSION.................................................................................................................. 17

# TABLE OF AUTHORITIES

Page

*Cases*

*Abilt v. CIA*,
   848 F.3d 305 (4th Cir. 2017)...................................................................................8, 12, 16

*Abilt v. CIA*,
   No. 14 Civ. 1626 (GBL)(MSN), 2015 WL 12765992 (E.D. Va. Oct. 27, 2015) ...................16

*ACLU v. DOJ*,
   681 F.3d 61 (2d Cir. 2012)..............................................................................................15

*Barlow v. United States*,
   No. 98-887X, 2000 WL 1141087 (Fed. Cl. July 18, 2000)..................................................17

*CIA v. Sims*,
   471 U.S. (1985)..........................................................................................................15, 16

*DiBacco v. Dep't of the Army*,
   926 F.3d 827 (D.C. Cir. 2019) ......................................................................................16

*Doe v. CIA*,
   576 F.3d 95 (2d Cir. 2009).......................................................................................*passim*

*Doe v. CIA*,
   No. 05 Civ. 7939 (LTS), 2007 WL 30099 (S.D.N.Y. Jan. 4, 2007)....................................15

*Ellsberg v. Mitchell*,
   709 F.2d 51 (D.C. Cir. 1983) ............................................................................................6

*El-Masri v. United States*,
   479 F.3d 296 (4th Cir. 2007)....................................................................................*passim*

*Husayn v. Mitchell*,
   938 F.3d 1123 (9th Cir. 2019)..........................................................................................17

*In re Terrorist Attacks of Sept. 11, 2001*,
   523 F. Supp. 3d 478 (S.D.N.Y. 2021)..............................................................................11

*In re United States*,
   872 F.2d 472 (D.C. Cir. 1989) ..........................................................................................6

*Kasza v. Browner*,
   133 F.3d 1159 (9th Cir. 1998).......................................................................................6, 8

*Kronisch v. United States*,
  No. 83 Civ. 2458, 1994 WL 524992 (S.D.N.Y. Sept. 27, 1994)...........................................16

*Kunstler v. CIA*,
  No. 22 Civ. 6913 (JGK), 2023 WL 8776339 (S.D.N.Y. Dec. 19, 2023)................................3

*Mohamed v. Jeppesen Dataplan, Inc.*,
  614 F.3d 1070 (9th Cir. 2010)........................................................................8, 10, 11, 14

*Montgomery v. IRS*,
  330 F. Supp. 3d 161 (D.D.C. 2018).....................................................................................11

*Restis v. American Coalition Against Nuclear Iran, Inc.*,
  No. 13 Civ. 5032(ER), 2015 WL 1344479 (S.D.N.Y. Mar. 23, 2015)....................................14

*Tilden v. Tenet*,
  140 F. Supp. 2d 623 (E.D. Va. 2000) ..................................................................................16

*United States v. Nixon*,
  418 U.S. 683 (1974) ..............................................................................................................6

*United States v. Reynolds*,
  345 U.S. 1 (1953)...........................................................................................................*passim*

*United States v. Zubaydah*,
  595 U.S. 195 (2022).........................................................................................................6, 10

*Wilner v. NSA*,
  592 F.3d 60 (2d Cir. 2009)................................................................................................7, 10

*Zuckerbraun v. Gen. Dynamics Corp.*,
  935 F.2d 544 (2d Cir. 1991)............................................................................................*passim*

### Statutes and Rules

Central Intelligence Act of 1949, § 6,
  50 U.S.C. § 3507.............................................................................................................4, 16

National Security Act of 1947, § 102A(i)(1),
  50 U.S.C. § 3024(i)(1).....................................................................................................4, 15

Fed. R. Civ. P. 8(b)-(c) ..........................................................................................................13

### Other Sources

Executive Order 12333, 46 Fed. Reg. 59,941 (Dec. 4, 1981) (as amended)............................15

Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010).....................................................2, 5

Memorandum from the Attorney General, *Policies and Procedures Governing Invocation of the State Secrets Privilege* (Sept. 23, 2009), https://www.justice.gov/archive/opa/documents/state-secret-privileges.pdf ...........................2

Memorandum from the Attorney General, *Supplement to Policies and Procedures Governing Invocation of the State Secrets Privilege* (Sept. 30, 2022), https://www.justice.gov/d9/pages/attachments/2022/09/30/supplement_to_policies_and_procedures_governing_invocation_of_the_state_secrets_privilege.pdf..........................................2

Office of the Director of Nat'l Intel., *Principles of Professional Ethics for the Intelligence Community*, https://www.dni.gov/index.php/how-we-work/ethics..........................................2

The Central Intelligence Agency (the "CIA" or "Government"), by its attorney Damian Williams, the United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion to dismiss the remaining claim in this action based upon the state secrets privilege and statutory privileges.

## PRELIMINARY STATEMENT

Only one claim remains in this case: Plaintiffs' allegation that the CIA, acting through others, violated their Fourth Amendment rights by allegedly copying the contents of Plaintiffs' electronic devices during their visits to Julian Assange at the Ecuadorian Embassy in London, England. The Government now moves to dismiss that claim based upon the state secrets privilege and statutory privileges.

The state secrets privilege is an absolute evidentiary privilege that enables the Government to withhold information in litigation when there is a reasonable danger that its disclosure, or risk of disclosure, would damage the national security or foreign policy interests of the United States. As set forth in his public declaration filed herewith, CIA Director William J. Burns has formally asserted the state secrets privilege, as well as statutory privileges under the National Security Act of 1947 and the Central Intelligence Act of 1949, to protect classified intelligence information at issue in this case. Director Burns has determined, as head of the CIA and after personally considering the matter, that either admitting or denying that the CIA has information implicated by the remaining claim reasonably could be expected to cause serious— and, in some cases, exceptionally grave—damage to national security.

Director Burns's public declaration is supplemented by a classified declaration, submitted for *in camera*, *ex parte* review by the Court, which provides the complete factual basis for his privilege assertions. As described below and in the Government's accompanying *ex parte* classified memorandum of law, the Director's declarations, which are entitled to the "utmost

deference," establish a "reasonable danger" that disclosure of the information subject to his claims of privilege would cause significant harm to national security. *United States v. Reynolds*, 345 U.S. 1, 10 (1953); *Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 546 (2d Cir. 1991) (citations and quotation marks omitted). The Court should therefore uphold the Director's assertion of the state secrets privilege and statutory privileges. The result of these privileges, if the Court deems them to be properly invoked, is to remove all privileged information from the litigation. Without the privileged information, the remaining claim in the case cannot proceed, and the case accordingly should be dismissed. The filing of this motion and the assertion of the state secrets privilege should not be construed as conceding in any way that the CIA ever possessed the contents of Plaintiffs' electronic devices.

The Government recognizes that the state secrets privilege is an extraordinary remedy, and it is not asserted lightly here. The CIA adheres to the Constitution and all other laws of the United States.[1] Indeed, as Director Burns avers in his public declaration, in accordance with the Attorney General's policies and procedures governing invocation of the state secrets privilege, the privilege is not being asserted here to conceal any violation of law.[2] Rather, Director Burns has asserted the privilege to protect and preserve vital, classified intelligence information that is

---

[1] *See* Office of the Director of Nat'l Intel., *Principles of Professional Ethics for the Intelligence Community*, https://www.dni.gov/index.php/how-we-work/ethics (last visited April 11, 2024).

[2] *See* Memorandum from the Attorney General, *Policies and Procedures Governing Invocation of the State Secrets Privilege* (Sept. 23, 2009) ("Holder Memo"), https://www.justice.gov/archive/opa/documents/state-secret-privileges.pdf (last visited April 11, 2024); Memorandum from the Attorney General, *Supplement to Policies and Procedures Governing Invocation of the State Secrets Privilege* (Sept. 30, 2022), https://www.justice.gov/d9/pages/attachments/2022/09/30/supplement_to_policies_and_procedures_governing_invocation_of_the_state_secrets_privilege.pdf (last visited April 11, 2024); *see also* Exec. Order No. 13526, § 1.7(a), 75 Fed. Reg. 707 (Jan. 5, 2010) (providing that "[i]n no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to . . . conceal violations of law").

at risk of disclosure if the litigation continues.  The privileged information—which includes confirming or denying whether the CIA has relevant classified information—is essential to Plaintiffs' remaining claim and to the CIA's ability to defend itself against that claim.  Moreover, the privileged information is so central to the case that any further litigation will threaten disclosure of privileged matters.  Dismissal is therefore necessary to protect the national security of the United States.

## STATEMENT OF FACTS

### A.     Relevant Background[3]

As relevant to this motion, Plaintiffs allege that the CIA, acting through co-defendants David Morales Guillen and Undercover Global S.L. (the "Spanish Defendants"), violated Plaintiffs' Fourth Amendment rights by allegedly copying the contents of their electronic devices during their visits between January 2017 and March 2018 to Julian Assange while he lived as an asylee at the Ecuadorian Embassy in London.  Declaration of William J. Burns, Director of the CIA, dated March 27, 2024 ("Public Burns Decl.") ¶ 6; *see* Am. Compl. ¶¶ 34, 36(e), 38-39, 46. The Government moved to dismiss this claim, among others, for lack of standing and failure to state a claim.  *See* ECF Nos. 34-35.  In its December 19 Order, the Court dismissed all of Plaintiffs' claims except their claim for injunctive relief against the CIA relating to the alleged seizure of the contents of their electronic devices.  Dec. 19 Order at 9-26; *Kunstler v. CIA*, No. 22 Civ. 6913 (JGK), 2023 WL 8776339, at *3-9 (S.D.N.Y. Dec. 19, 2023).

Following the December 19 Order, the Government advised the Court and Plaintiffs that, upon review, the CIA had "concluded that answering the complaint—by confirming, denying, or

---

[3] This statement focuses on the allegations and procedural history relevant to the remaining claim in this case.  Familiarity with the allegations of Plaintiffs' amended complaint, ECF No. 27 ("Amended Complaint"), the prior motion practice, and this Court's December 19, 2023, memorandum opinion and order, ECF No. 77 ("December 19 Order"), is presumed.

stating that it is without information regarding the allegations in this case—could itself serve to reveal classified information." ECF No. 81 at 1. Accordingly, the CIA decided "to assert the State Secrets Privilege and to seek approval of the defense of that privilege assertion in this litigation," in accordance with the policies and procedures set forth by the Attorney General governing invocation of this privilege. *Id.*; *see supra* note 2. The Government requested until April 15, 2024, to complete this approval process. *See* ECF No. 81 at 4. The Court approved this request. ECF No. 82.

**B.     The CIA Director's Assertions of the State Secrets and Statutory Privileges**

Director Burns has now formally asserted the state secrets privilege, as head of the CIA and after personal consideration of the matter. Public Burns Decl. ¶¶ 8, 13. He has also asserted and claimed the CIA's statutory privileges under the National Security Act of 1947, 50 U.S.C. § 3024(i)(1), and the Central Intelligence Act of 1949, 50 U.S.C. § 3507, to protect intelligence sources, methods and activities at issue in this litigation. Public Burns Decl. ¶ 8.

Director Burns asserted these privileges based upon his determination that "either admitting or denying that CIA has information implicated by" Plaintiffs' remaining claim "reasonably could be expected to cause serious—and in some cases, exceptionally grave—damage to the national security of the United States." *Id.* ¶ 9. The Director's privilege assertions in this case "encompass[] withholding from public disclosure either confirmation or denial that CIA has any information, to include information relating to classified sources, methods, interests, or activities, that may relate to the [P]laintiffs' remaining allegations." *Id.* ¶ 10.

Director Burns determined, after deliberation and personal consideration, that "the complete factual bases for [his] privilege assertions cannot be set forth on the public record without confirming or denying whether CIA has information relating to this matter and therefore risking the very harm to U.S. national security" that he seeks to protect. *Id.* ¶ 9. Accordingly, he

has separately submitted a classified declaration, for the Court's *in camera*, *ex parte* review, that "more fully defines the scope of information" protected by his privilege assertions and "explains the harm to national security that reasonably could be expected to result from the unauthorized disclosure of such classified information." *Id.* ¶ 11.[4]

Director Burns attests that he "do[es] not assert the state secrets privilege lightly, nor do[es] he] assert the privilege to conceal violations of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization, or agency; or to prevent or delay the release of information that does not require protection in the interest of national security." *Id.* ¶ 12; *see also* Holder Memo at 2; Exec. Order No. 13526, § 1.7(a). Rather, the Director avers that he has "assert[ed] the state secrets and statutory privileges to protect and preserve vital, classified intelligence information." Public Burns Decl. ¶ 12. He "therefore respectfully request[s] that the Court take all necessary steps to protect the classified national security information implicated by this litigation, including whether or not the CIA possesses any material relevant to this litigation." *Id.* ¶ 14.

---

[4] Director Burns states his belief that his unclassified and classified declarations "adequately explain[] why this case risks the disclosure of classified and privileged intelligence information that reasonably could be expected to cause serious—and in some cases, exceptionally grave— damage to the national security of the United States." Public Burns Decl. ¶ 14. However, should the Court require additional information regarding his claims of privilege, the Director "respectfully request[s] an opportunity to provide such additional information prior to the entry of any ruling regarding those claims." *Id.*

**ARGUMENT**

I.   **THE COURT SHOULD UPHOLD THE CIA DIRECTOR'S ASSERTION OF THE STATE SECRETS PRIVILEGE AND DISMISS PLAINTIFFS' REMAINING CLAIM ON THAT BASIS**

A.   **The State Secrets Privilege**

The state secrets privilege, recognized by the Supreme Court in *United States v. Reynolds*, 345 U.S. 1 (1953), is an "evidentiary rule that allows the government to withhold information from discovery when disclosure would be inimical to national security." *Zuckerbraun*, 935 F.2d at 546. "The various harms, against which protection is sought by invocation of the privilege, include impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments." *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983) (footnote omitted); *see also Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998) ("[T]he government may use the state secrets privilege to withhold a broad range of information."). Although the state secrets privilege "was developed at common law, it performs a function of constitutional significance" because it is essential to the President's Article II powers to conduct foreign affairs and provide for the national defense. *El-Masri v. United States*, 479 F.3d 296, 303 (4th Cir. 2007) (citing *United States v. Nixon*, 418 U.S. 683, 710 (1974)); *In re United States*, 872 F.2d 472, 482 (D.C. Cir. 1989) (privilege is "protected by constitutional principles of separation of powers").

Once properly invoked, "the state secrets privilege is absolute. No competing public or private interest can be advanced to compel disclosure of information found to be protected by a claim of privilege." *Ellsberg*, 709 F.2d at 57. "[E]ven the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that [state] secrets are at stake." *Reynolds*, 345 U.S. at 11; *accord United States v. Zubaydah*, 595 U.S. 195, 205 (2022). For these reasons, the privilege "is not to be lightly invoked." *Reynolds*, 345 U.S. at 7.

The Second Circuit has identified a three-step inquiry for courts to evaluate an assertion of the state secrets privilege.  First, the Court must determine whether the procedural requirements of the privilege have been satisfied.  "As a procedural matter, 'the privilege may be invoked only by the government.'"  *Doe v. CIA*, 576 F.3d 95, 104 (2d Cir. 2009) (quoting *Zuckerbraun*, 935 F.2d at 546); *see Reynolds*, 345 U.S. at 7.  "[I]t 'must be claimed by the head of the department with control over the matter in question after personal consideration by that officer.'"  *Doe*, 576 F.3d at 104 (quoting *Zuckerbraun*, 935 F.2d at 546); *see Reynolds*, 345 U.S. at 7.

Second, the Court must "address the 'validity' of the privilege, 'satisfying itself that there is a reasonable danger that disclosure of the particular facts in litigation will jeopardize national security,' while not compelling 'disclosure of the very thing the privilege is designed to protect.'"  *Doe*, 576 F.3d at 104 (quoting *Zuckerbraun*, 935 F.2d at 546-47); *see Reynolds*, 345 U.S. at 7.  In making this inquiry, the Court must afford the "utmost deference" to the Government's predictive judgments about the potential harms from disclosure, and must uphold the privilege assertion if it is satisfied that the Government has demonstrated a "reasonable danger" that disclosure of the information will harm national security.  *Reynolds*, 345 U.S. at 10; *Zuckerbraun*, 935 F.2d at 547 (citations and quotation marks omitted).  Concern about courts' institutional competence to assess the potential harms to national security from the disclosure of classified information is particularly acute in the context of intelligence matters.  *See El-Masri*, 479 F.3d at 305 ("[T]he executive branch's expertise in predicting the potential consequences of intelligence disclosures is particularly important given the sophisticated nature of modern intelligence analysis . . . ." (citation omitted)); *see also Wilner v. NSA*, 592 F.3d 60, 76 (2d Cir. 2009) ("Recognizing the relative competencies of the executive and judiciary, we believe that it

7

is bad law and bad policy to second-guess the predictive judgments made by the government's intelligence agencies . . . regarding questions such as whether disclosure of [intelligence] records would pose a threat to national security." (citation and quotation marks omitted)).

Finally, the Court must "address the 'effect of an invocation of the privilege,' in light of the exclusion of the evidence, on the plaintiff's claim or defendant's defense." *Doe*, 576 F.3d at 104 (quoting *Zuckerbraun*, 935 F.2d at 547).  "'In some cases,' that effect 'may be so drastic as to require dismissal.'"  *Id.*  In *Zuckerbraun*, for example, factual questions concerning liability could not be "resolved or even put in dispute without access to data" that was "in its entirety classified and subject to the claim of privilege."  935 F.2d at 547.  Because "the very subject matter of th[e] action [wa]s thus a state secret," and there was "no evidence available to the [plaintiff] to establish a *prima facie* case," dismissal was necessary.  *Id.* at 547-48 (citing *Reynolds*, 345 U.S. at 11 n.26); *see also Kasza*, 133 F.3d at 1166 (where the "very subject matter" of the action is a state secret, resolution of the action "based solely on the invocation of the state secrets privilege" is appropriate).  Dismissal is also required "if the circumstances make clear that privileged information will be so central to the litigation that any attempt to proceed will threaten that information's disclosure."  *El-Masri*, 479 F.3d at 308, *quoted in Abilt v. CIA*, 848 F.3d 305, 313 (4th Cir. 2017); *accord Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1083 (9th Cir. 2010) (en banc) (dismissal appropriate where "litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets" (collecting cases)).

## B.     The Government Has Properly Invoked the State Secrets Privilege

The Government has satisfied the requirements for invoking the privilege in this case. With regard to the procedural requirements, the privilege has been formally invoked by the CIA Director, William J. Burns, *see* Public Burns Decl. ¶¶ 1, 8, who is the "head of the department with control over the matter in question," *Doe*, 576 F.3d at 104 (quotation marks omitted).

8

Director Burns made this assertion after personally considering the matter. Public Burns Decl. ¶ 8.

Director Burns has also demonstrated that disclosure of the information subject to his claim of privilege "reasonably could be expected to cause serious—and in some cases, exceptionally grave—damage to the national security of the United States." *Id.* ¶ 9. The complete factual basis for the Director's privilege assertion cannot be set forth on the public record without confirming or denying whether the CIA has information relating to this matter, and thereby risking the very harm to U.S. national security that the Director seeks to protect. *Id.* However, the Director's *ex parte* classified declaration explains in detail both the scope of the classified information encompassed by his privilege assertion and the specific harms to national security that reasonably could be expected to result from unauthorized disclosure of such classified information. *Id.* ¶ 11. As set forth in the Government's *ex parte* classified memorandum of law, the factual presentation set forth in Director Burns's classified declaration demonstrates a "reasonable danger" that disclosure of the information subject to his claim of privilege will expose "matters which, in the interest of national security, should not be divulged." *Reynolds*, 345 U.S. at 10; *see also Doe*, 576 F.3d at 104 (court must "'satisfy[] itself that there is a reasonable danger that disclosure of the particular facts in litigation will jeopardize national security,' while not compelling 'disclosure of the very thing the privilege is designed to protect'" (quoting *Zuckerbraun*, 935 F.2d at 546-47)).

The nature of the remaining claim itself underscores the potential harm to national security. That claim alleges that the CIA, acting through the Spanish Defendants, allegedly copied the contents of Plaintiffs' electronic devices during their visits between January 2017 and March 2018 to Assange at the Ecuadorian Embassy in London. December 19 Order at 23-25;

*see* Public Burns Decl. ¶ 6.  Confirming or denying whether the CIA has information implicated by these allegations would reveal the agency's involvement—or lack thereof—in particular intelligence activities at a specific time and place.  Courts have long recognized the need to protect such information at the request of the nation's intelligence agencies.  *See, e.g.*, *Zubaydah*, 595 U.S. at 205 (upholding assertion of state secrets privilege with regard to information that would confirm or refute the existence of alleged CIA covert facility in foreign country); *Mohamed*, 614 F.3d at 1086 (same for "information that would tend to confirm or deny whether [defendant aviation company] or any other private entity assisted the CIA with clandestine intelligence activities").[5]

To be clear, the filing of this motion and the assertion of the state secrets privilege should not be construed as conceding in any way that the CIA ever possessed the contents of Plaintiffs' electronic devices.  Instead, as stated by Director Burns in his public declaration and detailed in his *ex parte* classified declaration, the privilege is being invoked because confirming or denying whether the CIA has any information relating to Plaintiffs' remaining claim would be harmful.  Public Burns Decl. ¶¶ 9-10.

The Second Circuit and courts in this district have recognized the need for intelligence agencies to be able to protect information that would reveal whether or not they employed particular intelligence sources or methods or engaged in particular intelligence activities, because confirming such information *one way or the other* causes substantial harm to the nation's intelligence-gathering abilities.  *See Wilner*, 592 F.3d at 69-75 (upholding so-called "Glomar

---

[5] The fact that Plaintiffs base their allegations on newspaper reporting, *see* Am. Compl. ¶¶ 44-45, does not undermine the CIA Director's assertion of the state secrets privilege, as there has been no official acknowledgment or confirmation—one way or the other—of any CIA role in the matters alleged in the Amended Complaint.  *See Zubaydah*, 595 U.S. at 211 (upholding CIA Director's assertion of state secrets privilege notwithstanding discussion of alleged covert CIA facility in the press and other non-official sources).

response" to FOIA request seeking records regarding alleged use of surveillance program to target particular individual); *In re Terrorist Attacks of Sept. 11, 2001*, 523 F. Supp. 3d 478, 520 (S.D.N.Y. 2021) (upholding state secrets privilege and granting protective order precluding civil litigants from "questioning witnesses in a manner designed to reveal whether [particular] individuals have a confidential covert or protected relationship with the United States"). To effectively protect intelligence sources, methods, and activities, the intelligence community must consistently refuse to confirm or deny their use in particular circumstances. *See In re Terrorist Attacks*, 523 F. Supp. 3d at 520. Otherwise, it will quickly become clear when an agency "'is protecting records and when there are no records to protect,'" and a savvy observer could readily deduce whether an alleged intelligence source exists or an alleged intelligence activity in fact took place. *Id.* (quoting *Montgomery v. IRS*, 330 F. Supp. 3d 161, 171 (D.D.C. 2018)). Director Burns's assertion of privilege to protect any information that would confirm or deny whether the CIA has information relating to Plaintiffs' remaining claim accords with this well-established principle.

Director Burns attests, moreover, that the privilege has not been asserted to conceal any violation of law. Public Burns Decl. ¶ 12; *see also* Holder Memo at 2 ("[T]he Department of Justice will not defend an invocation of the privilege in order to: (i) conceal violations of the law, inefficiency, or administrative error; (ii) prevent embarrassment to a person, organization, or agency of the United States government; (iii) restrain competition; or (iv) prevent or delay the release of information the release of which would not reasonably be expected to cause significant harm to national security."); *Mohamed*, 614 F.3d at 1090 (noting the Government's certification that this requirement had been met). Rather, as Director Burns confirms in his public

declaration, and details in his *ex parte* classified declaration, the privilege has been asserted "to protect and preserve vital, classified intelligence information."  Public Burns Decl. ¶ 12.

For all these reasons, the Court should uphold the Director's assertion of the state secrets privilege.

### C. Application of the State Secrets Privilege Requires Dismissal of Plaintiffs' Remaining Claim

If the Director's assertion of the state secrets privilege is upheld, the Court must determine the effect of the invocation of the privilege, in light of the exclusion of the evidence, on Plaintiffs' remaining claim and the CIA's defenses. *Doe*, 576 F.3d at 104.  The effect of the privilege in this case requires dismissal of Plaintiffs' remaining claim, for three separate but related reasons.

First, the privileged information is essential to Plaintiffs' ability to state a *prima facie* claim. *See Zuckerbraun*, 935 F.2d at 547.  The Director's privilege assertion precludes access to evidence that could confirm or deny Plaintiffs' remaining allegations that the CIA, acting through others, allegedly copied the contents of Plaintiffs' electronic devices in violation of their Fourth Amendment rights.  Public Burns Decl. ¶¶ 9-10.

Second, and relatedly, application of the privilege precludes the CIA from defending itself against Plaintiffs' claim. *See Zuckerbraun*, 935 F.2d at 547 (dismissal proper "if the court determines that the privilege so hampers the defendant in establishing a valid defense that the trier is likely to reach an erroneous conclusion").  As explained, the CIA cannot publicly confirm or deny whether it has any information implicated by Plaintiffs' remaining claim, and thus cannot admit or deny Plaintiffs' factual allegations, raise affirmative defenses, or indeed defend itself in any way. *See Abilt*, 848 F.3d at 316 (affirming dismissal where, "based on the nature of

[the plaintiff's] claims, virtually any reason the CIA could offer for its actions would require the disclosure of information" that was privileged).

As in *Zuckerbraun*, factual questions concerning liability "cannot be resolved or even put in dispute without access to" information that is "in its entirety classified and subject to the claim of privilege." 935 F.2d at 547.  There is simply "no evidence available" for either Plaintiffs to attempt to establish a *prima facie* case or the CIA to mount a valid defense.  *Id.*  "The very subject matter of this action is thus a state secret." *Id.*

Finally, dismissal is required because the privileged information is "so central to the litigation that any attempt to proceed will threaten that information's disclosure." *El-Masri*, 479 F.3d at 308; *see* Public Burns Decl. ¶ 14 (averring that "this case risks disclosure of classified and privileged intelligence information").  If Plaintiffs' remaining claim is not dismissed, the CIA would have to answer the Amended Complaint forthwith, and discovery would begin shortly thereafter.  *See* ECF No. 82 (requiring the CIA to file an answer by April 15, and the parties to file a report pursuant to Fed. R. Civ. P. 26(f) by April 25, if no motion to dismiss was filed).  To answer, the CIA would need to respond specifically to the factual allegations relating to the remaining claim, and to identify any affirmative defenses.  *See* Fed. R. Civ. P. 8(b)-(c).  Doing so would require the CIA to reveal privileged information, by confirming whether or not it has information implicated by the allegations relating to Plaintiffs' remaining claim.  Public Burns Decl. ¶ 10.

Furthermore, although Plaintiffs have not yet served any discovery requests, they would almost certainly seek documents and deposition testimony, and propound interrogatories and requests for admission, in an effort to substantiate the allegations relating to their remaining claim.  Responding to such requests would require the CIA to reveal privileged information, as

the agency would have to confirm or deny whether it has any information, to include information relating to intelligence sources, methods, interests, or activities, that may relate to that claim.  *Id.* Director Burns's classified declaration provides further detail to illustrate how litigation of Plaintiffs' claim would risk disclosure of privileged information.  *See id.* ¶ 14.

Courts have concluded that the state secrets privilege requires dismissal in such cases. The Fourth Circuit concluded in *El-Masri* that the plaintiff could not litigate claims related to his alleged detention or rendition by the CIA—even though the Government had officially acknowledged the existence of a CIA rendition, detention, and interrogation program in general—because "virtually any conceivable response to [the plaintiff's] allegations would disclose privileged information," and thus the case could not be "litigated without threatening the disclosure of . . . state secrets." 479 F.3d at 308-10 (emphasis omitted).  Similarly, in a case brought by foreign nationals who were allegedly transferred to other countries through the CIA program, the Ninth Circuit held that dismissal was required "because there [wa]s no feasible way to litigate [the defendant aviation company's] alleged liability without creating an unjustifiable risk of divulging state secrets."  *Mohamed*, 614 F.3d at 1087; *see also id.* at 1079 (dismissal required because "litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets").  Courts in this district have also granted dismissal on this ground.  *See Restis v. American Coalition Against Nuclear Iran, Inc.*, No. 13 Civ. 5032(ER), 2015 WL 1344479, at *6 (S.D.N.Y. Mar. 23, 2015) ("Even if Plaintiffs could . . . make their case without the excluded evidence, . . . the Court is convinced that further litigation of this action would impose an unjustifiable risk of disclosing state secrets.").

For all these reasons, acceptance of the state secrets privilege requires dismissal of the remaining claim in this lawsuit.  *See Doe v. CIA*, No. 05 Civ. 7939 (LTS), 2007 WL 30099, at *3

(S.D.N.Y. Jan. 4, 2007) (dismissing action after finding that "Plaintiffs cannot make out a *prima facie* case, nor could the Government defend itself against their claims, without relying on privileged information and that any further ligation would threaten disclosure of these privileged matters"); *aff'd*, 576 F.3d 95 (2d Cir. 2009).  "As was the case in *Zuckerbraun*, 'the very subject matter of this action is . . . a state secret,'" *id.* (quoting *Zuckerbraun*, 935 F.2d at 547; alteration omitted), and moreover any further litigation would require the CIA to reveal privileged information by admitting or denying whether it has information implicated by Plaintiffs' remaining claim.  The claim therefore cannot proceed further and must be dismissed.

## II.   THE INFORMATION AT ISSUE IS ALSO SUBJECT TO THE CIA'S STATUTORY PRIVILEGES

In addition to the state secrets privilege, Director Burns has also "assert[ed] and claim[ed] the CIA's statutory privileges under the National Security Act of 1947 and the Central Intelligence Agency Act of 1949 . . . to protect intelligence sources, methods, and activities at issue in this litigation."  Public Burns Decl. ¶ 8 (citing 50 U.S.C. §§ 3024(i), 3507).

Section 102A(i)(1) of the National Security Act provides that the Director of National Intelligence "shall protect . . . intelligence sources and methods from unauthorized disclosure."  50 U.S.C. § 3024(i)(1).  As Director Burns explains, "[i]n accordance with guidance from the DNI, and consistent with Section 1.6(d) of [Executive Order] 12333, the CIA is required to protect intelligence sources, methods, and activities from unauthorized disclosure."  Public Burns Decl. ¶ 8 (citing Exec. Order No. 12333, § 1.6(d), 46 Fed. Reg. 59,941 (Dec. 4, 1981) (as amended)).  The National Security Act vests the CIA with "very broad authority to protect all sources of intelligence information from disclosure."  *ACLU v. DOJ*, 681 F.3d 61, 73 (2d Cir. 2012) (quoting *CIA v. Sims*, 471 U.S. at 159, 168-69 (1985)) (quotation marks omitted).  Indeed, the Supreme Court has instructed that the "'plain meaning' of 'intelligence sources and methods'

in [the National Security Act] 'may not be squared with any limiting definition that goes beyond the requirement that the information fall within the [CIA's] mandate to conduct foreign intelligence.'" *Id.* (quoting *Sims*, 471 U.S. at 169).

Section 6 of the CIA Act provides similarly broad authority, by exempting the CIA from the provisions of any other laws "which require the publication or disclosure of the organization or functions of the Agency, or of the names, official titles, salaries, or numbers of personnel employed by the Agency."  50 U.S.C. § 3507.  The CIA Act "protects from disclosure certain information relating to personnel," as well as the CIA's organization and functions, "wherever that information may be found."  *DiBacco v. Dep't of the Army*, 926 F.3d 827, 835 (D.C. Cir. 2019).

Like the state secrets privilege, these statutory privileges protect information relating to intelligence sources and methods, and the CIA's organization, functions, and personnel, from disclosure in civil litigation.  *See Kronisch v. United States*, No. 83 Civ. 2458, 1994 WL 524992, at *8 (S.D.N.Y. Sept. 27, 1994) (Buchwald, M.J.) (noting that "numerous courts have upheld the CIA's assertion of its statutory privilege in the context of civil discovery," and collecting cases), *report and recommendation adopted*, 1995 WL 303625 (S.D.N.Y. May 18, 1995) (Wood, J.), *aff'd*, 150 F.3d 112 (2d Cir. 1998).

Although the CIA and other intelligence agencies have—as in this case—asserted their statutory privileges in addition to the state secrets privilege, courts have typically found it unnecessary to consider the statutory privileges in light of their determinations relating to the state secrets privilege.  *See, e.g.*, *Abilt v. CIA*, No. 14 Civ. 1626 (GBL)(MSN), 2015 WL 12765992, at *3 (E.D. Va. Oct. 27, 2015), *aff'd*, 848 F.3d 305 (4th Cir. 2017); *Tilden v. Tenet*, 140 F. Supp. 2d 623, 625 (E.D. Va. 2000); *Barlow v. United States*, No. 98-887X, 2000 WL

1141087, at *3 (Fed. Cl. July 18, 2000); *see also Husayn v. Mitchell*, 938 F.3d 1123, 1129 (9th

Cir. 2019), *rev'd and remanded sub nom. United States v. Zubaydah*, 595 U.S. 195 (2022).

Similarly here, the Court need not address the CIA's statutory privileges because the state secrets

privilege fully disposes of the issues in this case.  Nevertheless, the statutory privileges provide

an additional basis to protect the information at issue in this case from unauthorized disclosure,

and underscore that the remaining claim cannot proceed without access to privileged

information.

## CONCLUSION

For the foregoing reasons, and the reasons detailed in the accompanying *ex parte*

classified submissions, the Court should uphold the CIA Director's assertion of the state secrets

privilege and statutory privileges and dismiss Plaintiffs' remaining claim in this case.

Dated: New York, New York
     April 15, 2024

                     DAMIAN WILLIAMS
                     United States Attorney for the
                     Southern District of New York

By:    s/*Jean-David Barnea*_____
                     JEAN-DAVID BARNEA
                     SARAH S. NORMAND
                     Assistant United States Attorneys
                     86 Chambers Street, 3rd Floor
                     New York, NY 10007
                     Tel. (212) 637-2679/2709
                     Email Jean-David.Barnea@usdoj.gov
                         Sarah.Normand@usdoj.gov

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that the Government's memoranda of law comply with the word limits and formatting rules in Section II.D of this Court's Individual Practices, as amended by the Court's Order dated April 12, 2024 (ECF No. 84). As measured by the word processing system used to prepare the Government's memoranda of law, there are 5249 words in this unclassified memorandum, and the unclassified memorandum and classified supplemental memorandum collectively contain fewer than 11,000 total words.

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:     _s/Jean-David Barnea_____
JEAN-DAVID BARNEA
Assistant United States Attorney