UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MARGARET RATNER KUNSTLER, DEBORAH
HRBEK, JOHN GOETZ & CHARLES GLASS,

                      Plaintiffs,                        22-Civ-6913 (JGK)

- vs. -

CENTRAL INTELLIGENCE AGENCY, MICHAEL R.
POMPEO, DAVID MORALES GUILLEN
and UNDERCOVER GLOBAL S.L.,

                      Defendants.
-------------------------------------------------------------------x

**MEMORANDUM OF LAW OF PLAINTIFFS
MARGARET RATNER KUNSTLER, DEBORAH HRBEK,
JOHN GOETZ AND CHARLES GLASS IN OPPOSITION
TO DEFENDANT CENTRAL INTELLIGENCE AGENCY'S
SECOND MOTION TO DISMISS THE COMPLAINT BASED ON THE STATE
SECRETS PRIVILEGE AND STATUTORY PRIVILEGES**

Dated: May 23, 2024

THE ROTH LAW FIRM, PLLC
295 Madison Avenue, 22nd Floor
New York, New York 10017
Tel: (212) 542-8882
Email: rich@rrothlaw.com
Richard A. Roth, Esq.

# **TABLE OF CONTENTS**

**Preliminary Statement**......................................................................................................................1

**BACKGROUND** ............................................................................................................................2

**ARGUMENT** ................................................................................................................................2

**POINT I:**     **THE STANDARD FOR ASSERTING THE STATE SECRETS PRIVILEGE IS NOT WHETHER INFORMATION IS CLASSIFIED** ..............................2

**POINT II:**    **THE ALLEGATIONS IN THE COMPLAINT ARE NOT A "SECRET"** ......3

       A.   There is a Feasible Way to Segregate Nonprivileged Information in this Case............................................................................................................ 8

**POINT III:**   **THE CIA FAILED TO MAKE ANY SHOWING OF A RISK TO NATIONAL SECURITY** ........................................................................................8

       A.   CIA Failed to Establish Any Reasonable Danger of Harming National Security ............................................................................................9

**POINT IV:**   **THE ACTION MAY PROCEED WITHOUT PRIVILEGED INFORMATION**..............................................................................................10

**POINT V:**    **DISMISSAL OF THE ACTION BASED ON STAUTORY PRIVILEGE IS UNPRECEDENTED** ...........................................................................................12

**Conclusion** ................................................................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*Al-Haramin Islamic Found. v. Bush*,
507 F.3d 1190 (9th Cir. 2007) ............................................................................................9

*American Civil Liberties Union. v. DOJ*,
681 F.3d 61 (2d Cir. 2012) ...............................................................................................12

*Black v. U.S.*
62 F.3d 1115 (8th Cir. 1995) ..............................................................................................9

*CIA v. Sims*,
471 U.S. 159 (1985)..........................................................................................................12

*DiBacco v. Department of the Army*,
926 F.3d 827 (D.C.Cir. 2019)...........................................................................................12

*Ellsberg v. Mitchell*,
709 F.2d 51 (D.C. Cir. 1983) ...................................................................................2, 9, 10

*Fazaga v. F.B.I.*,
965 F.3d 1015 (9th Cir. 2020) ....................................................................................... 7-8

*Federal Bureau of Investigation v. Fazaga*,
595 U.S. 344 (2022)...............................................................................................1, 3, 8, 9

*General Dynamics Corp. v. U.S.*
563 U.S. 478 (2011) ...........................................................................................................8

*Gorin v. United States*,
312 U.S. 19 (1941).............................................................................................................9

*Halkin v. Helms*,
690 F.2d 977 (D.C. Cir. 1982) ....................................................................................... 3-4

*Hepting v. AT&T Corp.,*
439 F.Supp.2d 974 (N.D.Cal. 2006) ...........................................................................3, 10

*Husayn v. Mitchell*,
938 F.3d 1123 (9th Cir. 2019) ...........................................................................................4

*Husayn v. Mitchell*,
965 F.3d 775 (9th Cir. 2020) ....................................................................................4, 8, 11

*Jabara v. Kelley,*
75 F.R.D. 475 (E.D.Mich. 1977) ..................................................................................................9

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998) ......................................................................................................12

*Kronisch v. United States*,
1994 WL 52992 (S.D.N.Y. 1994) .............................................................................................12

*Lerner v. Casey*,
357 U.S. 399 (1958) ..................................................................................................................11

*Mohamed v. Jeppsen Dataplan, Inc.*,
614 F.3d 1070 (9th Cir. 2010) ...............................................................................................8, 10

*Roule v. Patraeus*,
2012 WL 2367873 (N.D.Cal. 2012) ....................................................................................11, 13

*United States v. Reynolds*
345 U.S. 1 (1953) ...............................................................................................................1, 3, 8

*United States v. Zabaydah*
595 U.S. 195, 204 (2022) ........................................................................................1, 3, 4, 6, 7, 8

*Zuckerbraun v. General Dynamics Corp.*,
935 F.2d 544 (2d Cir. 1991) .......................................................................................................9

## **STATUTES**

Central Intelligence Act of 1949, § 6,
50 U.S.C. § 3507 .......................................................................................................................12

National Security Act of 1947, § 102A(i)(1),
50 U.S.C. § 3024(i)(1) ..............................................................................................................12

Fed R. Evid. 104(a) .......................................................................................................................4

## **FOREIGN CASES**

*Assange v. USA*
AC-202220lon-001745 and 1746 (High Court of Justice, King's Bench Division) .......................5

## PRELMINARY STATEMENT

The CIA has now moved to dismiss the case, a second time, based on its assertion of the state secrets privilege. In support of its motion, the Director of the CIA, William Burns, has submitted a declaration in which he avers that he has "asserted the state secrets and statutory privileges to protect and preserve vital, classified intelligence information." Dkt. No. 87, Public Burns Decl., ¶ 12. However, critically, the disclosure of classified information is <u>not the standard</u> for applying the state secrets privilege. The relevant inquiry is whether the information poses a threat to national security. *Federal Bureau of Investigation v. Fazaga,* 595 U.S. 344, 357 142 S.Ct. 1051, 1061 (2022) ("central question [in applying the privilege] is . . .whether disclosure of evidence would harm national security"); see *U.S. v. Reynolds*, 345 U.S. 1, 10 (1953) (the privilege applies where "there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged.") see also, *e.g., United States v. Zabaydah*, 595 U.S. 195, 204 (2022) ("The state-secrets privilege permits the Government to prevent disclosure of information when that disclosure would harm national security interests"). Accordingly, Director Burns has not satisfied the CIA's burden and the assertion of the privilege should be rejected.

Further, any claim that national security will be harmed must be met skeptically by this court given that the facts in this case are not a "secret" as they have already been the subject of testimony in court proceedings in England and Spain, and widely reported by the press. See Dkt No. 27 (FAC, ¶¶ 44-45); Dkt. No. 38 (Pl. Opp. to CIA's First Motion to Dismiss at n. 3, 12, 15, 16, 19, 22, 25-27, 32, 34, 36)

This case does not concern terroristic threats to destroy America that were uncovered through technology or a program that must never be disclosed or else the threat will succeed. Rather, this case is about the CIA searching and seizing cell phones and laptops of respected

1

American lawyers and journalists, who committed no crime, and who have now stood up against loss of liberties and the government's intrusion into their private lives by copying the contents of their cell phones and laptops.  Under these circumstances, the Court must critically examine the CIA's claim that national security will be at risk unless the Court grants its motion to dismiss. *Ellsberg v. Mitchell*, 709 F.2d 51, 58 (D.C. Cir. 1983) ("in order to ensure that the [state secrets] doctrine is not asserted more frequently and sweepingly than necessary, it is essential that the courts continue critically to examine instances of its invocation.").

## BACKGROUND

The First Amended Complaint alleges that when the Plaintiffs visited Julian Assange at the Ecuadorian Embassy in London in 2017 and 2018, their electronic devices were unlawfully searched and seized without a warrant or reasonable cause by the CIA and the private company that operated the security at the embassy, Undercover Global ("UC Global"). Dkt. No. 27, ¶¶ 36-38; 73, ¶ 36A.  On December 19, 2023, the Court denied the CIA's motion to dismiss. Dkt. No. 77. Following that decision, the CIA informed the Court that instead of answering the Complaint, the CIA would make a second motion to dismiss on this basis of the state secrets privilege. Dkt. No. 81.  As respectfully submitted, herein, the CIA's second motion to dismiss based on the state secrets privilege should also be denied because the CIA has failed to meet its burden in asserting the privilege.

## ARGUMENT

### POINT I

### THE STANDARD FOR ASSERTING THE STATE SECRETS PRIVILEGE IS NOT WHETHER INFORATION IS CLASSIFIED

The Director of the CIA, William Burns, has submitted a declaration in which he avers that he has "asserted the state secrets and statutory privileges to protect and preserve vital,

2

classified intelligence information." Dkt. No. 87, Public Burns Decl., ¶ 12. However, critically, this is <u>not the standard</u> for applying the state secrets privilege. See *Halkin v. Helms,* 690 F.2d 977, n. 69 (D.C. Cir. 1982) ("although matter qualifying as a secret of state will presumably always qualify for classified status, the privilege operates on premises. . .entirely different from those governing the routine classification of information by lesser officials."). Rather, the relevant inquiry is whether the information poses a threat to national security. *Federal Bureau of Investigation v. Fazaga,* 595 U.S. 344, 357 142 S.Ct. 1051, 1061 (2022) ("central question [in applying the privilege] is . . .whether disclosure of evidence would harm national security"); see *Reynolds* at 10 (the privilege applies where "there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged."); see also, *e.g., Zubaydah* at 204 ("The state-secrets privilege permits the Government to prevent disclosure of information when that disclosure would harm national security interests"). While elsewhere in his declaration Director Burns make the sweeping claim that admitting or denying the allegations in the First Amended Complaint could be expected to cause serious damage to the national security of the United States, no explanation is provided. Burns Decl., ¶ 9. Accordingly, Director Burns has not satisfied the CIA's burden, the assertion of the privilege should be rejected, and the CIA's motion to dismiss should be denied.

## POINT II

### THE ALLEGATIONS IN THE COMPLAINT ARE NOT A "SECRET"

In addition, the CIA's motion to dismiss based on state secrets privilege should be denied because there is no "secret" at issue. The first step in determining whether a piece of information constitutes a "state secret" is determining whether that information actually is a "secret." *Hepting v. AT&T Corp.*, 439 F.Supp.2d 974, 986 (N.D.Cal. 2006). "In determining whether a factual statement is a secret for purposes of the state secrets privilege, the court should look only at

3

publicly reported information that possesses substantial indicia of reliability and whose verification or substantiation possesses the potential to endanger national security." *Id.* at 990. "That entails assessing the value of the information to an individual or group bent on threatening the security of the country, as well as the secrecy of the information." *Id*. Finally, in determining whether the privilege applies, the court is not limited to considering strictly admissible evidence. *Id.* at 991 (citing FRE 104(a) (Preliminary questions concerning the existence of a privilege shall be determined by the court. In making its determination it is not bound by the rules of evidence except those with respect to privileges.). This is because the issue at bar is not proving a question of liability but rather determining whether information that the government contends is a secret is actually a secret. *Id*. In making this determination, the court may rely upon reliable public evidence that might otherwise be inadmissible at trial because it does not comply with the technical requirements of the rules of evidence. *Id*.

The Supreme Court's most recent decision on the state secrets privilege is instructive. In *United States v. Zabaydah*, 595 U.S. 195, 207 (2022), the Court held, "*sometimes* information that has entered the public domain may nonetheless fall within the scope of the state secrets privilege." (emphasis added). See *Husayn v. Mitchell*, 938 F.3d 1123, 1133 (9th Cir. 2019), *rev'd and remanded sub nom. United States v. Zabaydah*, 595 U.S. 195 (2022) ("In order to be a 'state secret,' a fact must first be a 'secret.'"). The Supreme Court's language in *Zabaydah* is clear that there are times when otherwise secret information that falls into the public domain is no longer within the scope of the privilege. This is such an instance.

Public court records confirm that the CIA spied on Americans who visited Assange at the embassy; it is not a secret. The CIA's spying was confirmed under oath by insiders of U.C. Global, in affidavits submitted in Julian Assange's extradition hearings in the U.K. See Exh. 4,

4

*Assange v. USA*, Approved Judgment, 26 Mar. 2024, Case No: AC-20220LON-001745 and 1746, High Court of Justice, King's Bench Division, Divisional Court.[2] The U.K. Court recited the evidence as follows:

> ¶ 70.  [Assange's] Spanish lawyers have filed a criminal complaint in Spain against the owner of UC Global, which was responsible for providing security at the Ecuador Embassy in London. Two anonymous witnesses who were employed by UC Global provided statements before a public notary. Witness 1 said that as well as providing monthly security reports to the government of Ecuador, UC Global also secretly provided copies of the reports to the United States authorities. The owner of UC Global made regular trips to the United States to speak with the CIA. His wealth increased considerably. The information provided to the United States included details of meetings between the applicant and his lawyers.
>
> ¶ 71.  Witness 2 alleges the following (assuming that when the witness says "American friends" this is a reference to the CIA). Guy Goodwin Gill (a lawyer who had visited the applicant) was required to leave his iPad with security when he entered the embassy. **The contents of his iPad were illicitly copied**. Witness 2 was asked to steal the nappy of a baby who was visiting [Assange] because the CIA wished to establish the child's paternity. Suggestions were made by the CIA of extreme measures to end the [Assange's] stay in the embassy, including leaving the door open to enable his kidnap or poisoning him. **Illicit recording equipment was placed in the embassy at the behest of the CIA.** He was asked to place stickers on the external windows of the embassy, which enabled the CIA (using directional microphones outside the embassy) to extract the [Assange's] conversations (despite a white noise machine [Assange] used as a counter-surveillance measure). Security personnel were asked to obtain the [Assange's] fingerprints from an imprint on a glass. Security personnel stole documents from the [Assange]. **Security personnel were instructed to target [Assange's] lawyers, and to photograph their documentation. He installed an FTP server which stored the embassy's daily security reports and which could be (and was) accessed remotely from the United States by the CIA. UC Global made monthly payments of €20,000 to the person responsible for security at the embassy to ensure that there were no negative reports about its work.**

*Id*. at ¶¶ 70-71 (emphasis added).

---

[2] *available at* https://www.judiciary.uk/judgments/assange-v-government-of-the-united-states-of-america-3/#related_content (last visited May 23, 2024).

The affidavits of "Witness 1" and "Witness 2" referenced in the Court's judgment are public court records and attached here as Exhibit 2-3. Quille Decl., ¶ 5, Exhs. 2-3.  The Witnesses were granted anonymity by a Spanish Court for fear of their safety. Quille Decl., ¶ 5, Exh. 1 (Martinez Aff.,. ¶¶ 4-12). All of these affidavits are publicly available as part of Assange's extradition matter in England. Quille Decl., ¶¶ 5-6. Further, these affidavits remain publicly available on the Internet. Quille Aff., ¶ 6. Further, the attorney for the owner of U.C. Global, David Morales, recently admitted in a German television interview that UC Global had worked for the CIA. *Who Spied on Julian Assange?* Dec. 3, 2019 avaiable at https://www.youtube.com/watch?v=qfWoIAsIn6Y  (last visited May 23, 2024). See *Id.* at 4:45 ("I have already said that UC Global has worked with the U.S. intelligence service multiple times.")

Under these circumstances, the CIA's spying operation at the Ecuadorian embassy in London is not a "secret." This is particularly the case, because the sworn statements come from insiders of UC Global. Quille Aff., Exhs. 2-3 (Witness 1 and 2 Affidavits). The Supreme Court has indicated the "insiders" have elevated importance in the analysis of whether the state secrets privilege applies, stating that information from "insiders" "is different in kind from speculation in the press or even by foreign courts because it leaves virtually no doubt as to the veracity of the information that has been confirmed." *Zabaydah* at 969. In *Zabaydah*, the Supreme Court used this reasoning to deny Zabaydah the ability to subpoena the same "secret" information (regarding the existence of a secret American detention site in Poland) from CIA "insiders" that had already been made public by "outsiders" such as the media and the President of Poland who confirmed the existence of the U.S. detention site in Poland. *Zabaydah* at 969.

6

Here, Plaintiffs have started this litigation with the purported 'secret' information having already been disclosed by "insiders" of UC Global who confirmed the U.C. Global worked with American intelligence agencies, and that the CIA's espionage that Ecuadorian embassy in London where the security was provided by U.C. Global, targeted Americans visiting Assange. Despite the fact that this 'secret' fell into the public domain through U.C. Global's employees' public testimony, the CIA claims that this information is a 'secret.' However, there is no secret, because, as stated by the Supreme Court in *Zabaydah*, the disclosure by U.C. Global insiders "leaves virtually no doubt as to the veracity of the information that has been confirmed." Here, the relationship between the CIA and U.C. Global at the embassy, and the conduct of U.C. Global and the CIA in the embassy, cannot be a secret, when one party to the secret has openly and *publicly* disclosed it. Quille Aff., ¶¶ 2-3. The Court should reject the CIA's attempt to put the toothpaste back in the tube.

Further, the concern that animated the Supreme Court's decision in *Zabyadah* to apply the state secrets privilege despite public reporting disclosing the 'secret' does not exist in this case. Specifically, in *Zabaydah* the Court's concern in accepting the assertion of the privilege was that, "sensitive relationships with other nations are based on mutual trust that the classified existence and nature of the relationship will not be disclosed." *Id*. at 208. Here, there is no allegation in the Complaint related to any relationships between the CIA and other nations or foreign intelligence services. The Complaint plainly alleges that the CIA put U.C. Global, the private company in charge of security at the embassy, on its payroll to harass Assange and violate Plaintiffs' Fourth Amendment rights. Dkt. No. 27 FAC, ¶¶ 36, 36A-38.

### A. There is a Feasible Way to Segregate Nonprivileged Information in this Case

Further, any hypothetical involvement or participation by another nation in the CIA's Fourth Amendment violations is not relevant to Plaintiff's claims, and the case can proceed without discovery or any inquiry into any other nation's hypothetical relationship with the United States or this case.  See *Husayn v. Mitchell*, 965 F.3d 775 (9th Cir. 2020)("a court to determine whether the contested materials contain nonprivileged information and, if so, whether there is any feasible way to segregate the nonprivileged information from the privileged information."); *Mohamed v. Jeppsen Dataplan, Inc.*, 614 F.3d 1070, 1082 (9th Cir. 2010). Only after exhausting this effort can a district court contemplate dismissal [based on state secrets privilege]." *Husayn* at 776.

## POINT III
## THE CIA FAILED TO MAKE ANY SHOWING OF A RISK TO NATIONAL SECURITY

The CIA's motion to dismiss based on the state secrets privilege must also be rejected because the CIA has failed to make any showing of a risk to national security by denying the CIA's motion. When the state secrets privilege is asserted, the central question is . . . whether its disclosure would harm national-security interests. *Federal Bureau of Investigation v. Fazaga,* 595 U.S. 344 (2022). As the Supreme Court explained in *Reynolds*, the privilege applies where "there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." *Id*. at 10; see *Federal Bureau of Investigation v. Fazaga,* 595 U.S. 344 (2022)(citing *Reynolds*) see also, *e.g., Zubaydah* at 204 ("The state-secrets privilege permits the Government to prevent disclosure of information when that disclosure would harm national security interests"); *General Dynamics Corp. v. U.S.*, 563 U.S., 478, 484 (2011) (noting that the privilege exists to serve the "sometimes-compelling

8

necessity of governmental secrecy" over "military, intelligence, and diplomatic" information). As explained in *Black v. U.S.*, 62 F.3d 1115, 1118 (8th Cir. 1995):

> The state secrets privilege has been held to apply to information that would result in "impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments," *Ellsberg v. Mitchell,* 709 F.2d 51, 57 (D.C.Cir.1983) (footnotes omitted), *cert. denied,* 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984), or where disclosure "would be inimical to national security," *Zuckerbraun v. General Dynamics Corp.,* 935 F.2d 544, 546 (2d Cir.1991). "Although the term 'military or state secrets' is amorphous in nature, it should be defined in the light of 'reason and experience,' much in the same way that the term 'national defense' has been defined ... [as] a 'generic concept of broad connotations, referring to the military and naval establishments and the related activities of national preparedness.' " *Jabara v. Kelley,* 75 F.R.D. 475, 483 n. 25 (E.D.Mich.1977) (quoting *Gorin v. United States,* 312 U.S. 19, 28, 61 S.Ct. 429, 434, 85 L.Ed. 488 (1941))

*Id.*

A court considering an assertion of the state secrets privilege may order the disclosure of lawfully obtained evidence if it finds that disclosure would not affect national security. *Federal Bureau of Investigation v. Fazaga,* 595 U.S. 344, 357 (2022); see *Hepting v. AT&T Corp.*, 439 F.Supp.2d 974, 986 (N.D.Cal. 2006)(denying assertion of state secrets privilege)("the court cannot conclude that merely maintaining this action creates a "reasonable danger" of harming national security."). "Simply ... invoking an ethereal fear that disclosure will threaten our nation is insufficient to support the privilege." *Al-Haramain Islamic Found. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007).

**A. The CIA Failed to Establish Any Reasonable Danger of Harming National Security**

Here, the CIA's motion fails to identify any "reasonable danger of harming national security." Such a claim, even if made, would be implausible for numerous reasons, including: (1) Assange is no longer at the Ecuadorian Embassy in London and has been in Belmarsh, a high

security prison in the UK, for the last five years[4]; and (2) U.C. Global no longer has the contract at the Ecuadorian Embassy.[5] There is no claim to the contrary by the CIA.

To the extent that government seeks to hide the details of its intelligence gathering at the embassy in 2017 and 2018, it must establish to the Court's satisfaction, that the details of its intelligence gathering at the Ecuadorian Embassy in 2017 and 2018, jeopardizes the national security of the United States *today*. This is an uphill burden as Assange has not been at the embassy for five years, U.C. Global no longer has the contract at the embassy, and the details of the operation have already been testified to by former employees of the private security company without any effect on the national security of the nation. Plainly, the government is asserting the privilege only to avoid the inconvenience of answering to Plaintiffs – well-respected American lawyers and journalists who pose no threat to national security – for unlawfully searching and seizing the contents of their electronic devices. It is clear that the government's invocation of the state secrets privilege is only being asserted to prevail in this action.

## POINT IV

## THE ACTION MAY PROCEED WITHOUT PRIVILEGED INFORMATION

"Even the state secrets privilege has its limits." *Hepting v. AT&T Corp.*, 439 F.Supp.2d 974, 986 (N.D.Cal. 2006). ("When a litigant must lose if the claim is upheld and the government's assertions are dubious in view of the nature of the information requested and the circumstances surrounding the case, careful *in camera* examination of the material is not only appropriate, but obligatory." *Ellsberg,* 709 F.2d at 59 n. 37 (citations omitted). To defer to a

---

[4] https://www.amnesty.org/en/latest/news/2024/04/julian-assanges-five-year-imprisonment-uk-unacceptable/

[5] https://english.elpais.com/international/2023-07-18/spanish-company-that-spied-on-assange-allegedly-informed-cia-about-meetings-held-by-latin-american-leaders.html

blanket assertion of secrecy here would be to abdicate that duty, particularly because the very subject matter of this litigation has been so publicly aired. The compromise between liberty and security remains a difficult one. But dismissing this case at the outset would sacrifice liberty for no apparent enhancement of security. *Lerner v. Casey*, 357 U.S. 399, 415 (1958) ("it is delusion to think that the nation's security is advanced by the sacrifice of the individual's basic liberties. The fears and doubts of the moment may loom large, but we lose more than we gain if we counter with a resort to alien procedures or with a denial of constitutional guarantees.")(internal citation omitted); *Husayn v. Mitchell*, 965 F.3d 775 (9th Cir. 2020)("the third step of that process, which requires a court to determine whether the contested materials contain nonprivileged information and, if so, whether there is any feasible way to segregate the nonprivileged information from the privileged information. *Mohamed*, 614 F.3d at 1082. Only after exhausting this effort can a district court contemplate dismissal. *Id.*")

Here, the CIA has not established that any purported privileged information that risks the security of the United States cannot be segregated from the fact that the CIA unlawfully searched and seized the contents of Plaintiff's cell phones and laptops at the Ecuadorian embassy in London in the years 2017 and 2018. Dkt. No. 27, FAC, ¶¶ 1- 4, 36-38; Dkt. No. 73, ¶ 36A; See *Roule v. Patraeus*, 2012 WL 2367873 (N.D.Cal. 2012)("the court cannot see why it should impose a full stop on discovery when redactions, pseudonyms, and high-level information conceivably could result in sufficient information being produced to Roule. The court denies without prejudice the Government's objections to discovery on this ground.")

Plaintiffs do not demand access to top secret military hardware, weapons, or war plans. Plaintiffs seek only to prove that the CIA unreasonably searched and seized the contents of their electronic devices in violation of U.S. law. The CIA's 18-month wait to even assert the privilege

demonstrates how weak the claim is. To the extent the fact that the CIA spied on Assange at the embassy is the "privileged" information, that information can also be segregated from Plaintiff's claim that the CIA violated *their* Fourth Amendment rights. Discovery of the results of the CIA's Assange espionage have no bearing on Plaintiff's claim and are unnecessary to establish the constitutional violations.

## POINT V

## DISMISSAL OF THE ACTION BASED ON STATUTORY PRIVILEGE IS UNPRECEDENTED

In addition to moving to dismiss the Complaint based on state secrets privilege, the CIA asserts the CIA's statutory privileges under Section 102A(i)(1) of the National Security Act of 1947 and the Central Intelligence Agency Act of 1949 to protect intelligence sources, methods, and activities at issue in this litigation. Dkt. No. 86 (CIA Br. at 15). 50 U.S.C. §§ 3024(i)(1), 3507. In support, the CIA cites *Kronisch v. United States*, 1994 WL 52992 at *8 (S.D.N.Y. 1994), however, *Kronisch* is not helpful to the CIA and easily distinguishable because that decision was the application of the CIA's statutory privileges in the context of discovery of discovery dispute, not a means to dispense with an action altogether on a motion to dismiss, particularly one alleging a violation of a plaintiff's Fourth Amendment rights by the CIA such as this one. See *Kronisch v. United States*, 150 F.3d 112, n. 3 (2d Cir. 1998)(denying motion to compel disclosure of redactions made in the CIA's production of thirty thousand pages of documents).

The remaining cases cited by the CIA are likewise distinguishable as all involved the assertion of statutory privileges in the context of redactions in government responses to Freedom of Information Act ("FOIA") requests, including *DiBacco v. Department of the Army*, 926 F.3d 827 (D.C.Cir. 2019); *ACLU v. DOJ*, 681 F.3d 61, 73 (2d Cir. 2012); and *CIA v. Sims*, 471 U.S. 159, 168-169 (1985). The CIA cites no authority for the complete dismissal of an action

based on the CIA's statutory privileges under the National Security Act of 1947 and the Central Intelligence Agency Act of 1949 and for this court to do so appears to be unprecedented. Regardless, the CIA has failed to establish why "[the court] should impose a full stop on discovery when redactions, pseudonyms, and high-level information conceivably could result in sufficient information being produced"). *Roule v. Patraeus*, 2012 WL 2367873 (N.D.Cal. 2012).

## Conclusion

For the foregoing reasons, the CIA's motion to dismiss based on its assertion of the state secrets privilege must be denied.

THE ROTH LAW FIRM, PLLC

By: */s/ Richard A. Roth*
Richard A. Roth, Esq.
295 Madison Avenue, 22nd Fl.
New York, New York 10017
Tel: 212-542-8882
Email: rich@rrothlaw.com

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this brief complies with the word limits and formatting rules in Section II.D of this Court's Individual Practices, as amended by the Court's order of March 16, 2023. ECF No. 33. As measured by the word processing system used to prepare this brief, there are 4,020 words in this brief.

THE ROTH LAW FIRM, PLLC

By: /s/ *Richard A. Roth*
     Richard A. Roth