(C.J. Act, 1967 s.9; M.C. Act 1980, s.102, M.C. Rules, 1981, r.70)

# STATEMENT OF WITNESS

**(Criminal Justice Act 1967, ss 2,9/M.C. Rules, 1968, r.58)**

Statement of: AITOR MARTÍNEZ JIMÉNEZ

Occupation: Lawyer

Age of witness
(if over 18 enter 'over 18') : Over 18

Address: Avenida Menéndez Pelayo, 87 – Piso 1A, Madrid 28007, Spain

This statement, consisting of 6 pages signed by me, is true to the best of my knowledge and belief and I make it knowing that, if it is tendered in evidence, I shall be liable to prosecution if I have wilfully stated in it anything which I know to be false or do not believe to be true.

Dated the 21st February, 2020

Signed

Signature witnessed by

1. My name is AITOR MARTÍNEZ JIMÉNEZ. I am a lawyer at the law firm "ILOCAD SL - Baltasar Garzón Abogados", which coordinates the defence of Julian Paul Assange. I am fluent in both Spanish and English.

2. On July 29, 2019 my firm filed a criminal complaint against the owner of the company UC Global, David Morales, for crimes against privacy and against the secrecy of communications between attorney-client (art. 19 in connection with art 197.4 of the Spanish Criminal Code), a crime of misappropriation (art. 253 CP), bribery (art. 424 and 427 Criminal Code) and money laundering (art. 301 Criminal Code). In addition, the complaint was also directed against the company UC Global as a legal person for committing a crime against privacy and against the secrecy of attorney-client communications (art. 197 CP), bribery (art. 427 CP) and money laundering (art. 302.2 CP). The complaint at that time was based on

evidence given by two witnesses who were permitted anonymity by the court in Spain as detailed below.

3. On September 17, 2019, a police operation was carried out, ordered by the Central Investigative Court No. 5 of the National Court (Audiencia Nacional), in which the owner of the company was arrested, and the accounts of the company frozen, together with the entry and search of his home and of the headquarters of the company UC Global. In addition the Central Investigative Court No. 5 agreed a set of proceedings, including the protection of three (3) former workers as protected witnesses who provided evidence to the court. Two of these witnesses have provided evidence in the current extradition proceedings USA vs. Julian Assange under identities Witness 1 and Witness 2.

**History leading to Protected Witness Status**

4. On May 20, 2019 my firm received an email to which I responded. The author of the email was a former worker for the company UC Global, the company in charge of the security of the Ecuadorian Embassy in London between 2015 and mid 2018. This witness [known as Witness 2 in the UK proceedings and Test-1 in Spanish criminal case] approached the office first without providing his identity. Before he was willing to speak to us he requested reassurance that his identity would be protected. Further, as has been set out in his statement and in the criminal complaint made to the Spanish Court drafted to contain the primary evidence he could give, he was able to provide extensive documentation to support that evidence which showed the commission of unlawful acts towards Julian Assange during his time in the Ecuadorian Embassy.

5. The witness had an appreciation of the serious step he was personally taking by providing that information to anyone else. Having been able to explore the detail that the witness could say it was very clear, if it was to lead to further investigation, that he would be potentially exposed to serious repercussions. He throughout that time expressed his fear of the exact consequences of making statements first to a notary public and thereafter to a court.

6. Later a second witness [known as Witness 1 in the UK proceedings and Test-2 in Spanish criminal case] was subsequently introduced to us by Witness 2. He too was afraid that David Morales could retaliate as a result of his giving information. (The reasons for the witnesses' fear are set out at paragraph 13 below.)

7. When Witness 1 and Witness 2 each gave their statements before the notary public on July 5, 2019 they both requested that they be granted protected status by the court because they feared that by co-operating they would be putting

Signed: 

Signature witnessed by:

themselves and their families at risk **[Exhibits 1 and 2].** As a result I requested the anonymity of Witness 1 and Witness 2 in the subsequent Criminal Complaint filed on July 29, 2019.

8. I again requested the protection of their identity in a separate document filed on September 2, 2019 at the Central Court of Instruction Number 5 in response to information requested by the court **[Exhibits 3 and 4].** This document refers to a Pdf which confirms the full names and National Identity Documents of the two workers of UC Global mentioned in the complaint and requests:

> "making the necessary arrangements in order to apply the corresponding reservation in order to preserve the identity of these two people, in accordance with Article 2 a) of Law 19/1994- 23 December, of protection for witnesses and experts in criminal cases, as we had requested in the written submission of the complaint."

9. At the end of this same document it states:

> "In accordance with what has been expressed in relation to Document No. 2 on the need to apply the necessary measures to preserve the identity of the two employees of UC GLOBAL, the need for this document not to be included in the proceedings is reiterated, and a number or code may be used to identify them in the case."

**10.** In response to these requests the witnesses were granted protected status by the court. I am unable to provide a copy of this resolution as it is confidential and kept with the court in order to maintain their anonymity. However the court refers to their protected status in a document dated September 20, 2019 **[Exhibit 5]:**

> "Given the status of the current proceedings, please cite the Protected Witnesses 'Test-1' and 'Test-2' via the Investigative Unit so that they attend this judicial site at 10.00AM on 2 October 2019 in order make a judicial declaration."

**11.** Thereafter the court has referred to them as Witness 1 and 2 (Test-1 and Test-2) as seen in the attached document which was signed before giving testimony to the court **[Exhibit 6].**

12. Both witnesses have an understanding that the protected status granted by the court extends to active police protective intervention if required.

**<u>Reasons for request of Anonymity/Protected Status</u>**

Signed:

Signature witnessed by:

13. The request for protected status was made primarily because of fear of repercussions by David Morales, the former employer of Witness 2 and former partner of Witness 1, as a result of their accusing him of serious crimes which could lead to a prison sentence. Furthermore, his former employees knew that David Morales had elite military training as a former member of the military who trained with the special ops unit of the Marine Infantry, the marine corps of the Spanish Navy. As a result of this they feared that he could possess firearms.

14. On September 17, 2019 the police carried out a search of David Morales' home and found guns with the serial numbers rubbed off as well as ammunition. A police report dated September 19, 2019 **[Exhibit 7]** by the Central Unit of Specialised and Violent Crime - Kidnapping and Extortion Section Investigation Group was submitted to Central Court of Instruction Number 5. The report states:

> "During the procedure…in the matrimonial room (male wardrobe area) a metal box was found containing 2 firearms with their corresponding cartridges and one more loose (sic). One of the guns was loaded with 6 bullets, the other gun together with the other cartridge were unloaded. Both have had their brand and serial number erased, and David Morales does not have an ownership license for the arms in question. In light of these facts, and given that the judicial warrant under which the procedure is being carried out does not contemplate the illegal possession of arms, the procedure is halted in order to communicate the discovery, via the Kidnapping and Extortion Section Investigation Group, to the Central Court of Instruction Number 5, which proceeds to broaden the remit in order to include the crime of illegal possession of weapons" **[pg. 18].**

15. The same police report also makes reference to a previous arrest of David Morales on 11/08/2011 at the Guadairo Post (Cadiz) for the discovery of secrets **[pg. 13].**

16. In a court order relating to the provisional release of David Morales after his arrest on September 17, 2019 the illegal possession of firearms and ammunition is again referred to:

> "During the search of the premises of the address no. 28 calle Padre Ruíz Candil, Jerez de la Frontera (Cádiz), where the subject lives, the discovery was made in the wardrobe of the principle bedroom of two firearms, both of which had had their serial numbers erased along with the brand and model details. Three cartridges were also found, two of which were empty and one which was loaded with six 9mm bullets inside one of the guns.

Signed: Signature witnessed by:

These arms lack the required ownership licences **[Exhibit 8, pg. 11].**

17. Whilst it is possible that David Morales has been able to identify Witness 1 and 2 because of the small number of former employees at his business, the lack of repercussions thus far is believed likely to be because David Morales has only provisional release with precautionary measures while the case is being investigated. The court case is ongoing and the court enquiries are now extending further. **The protected status of the witnesses remains essential.**

18. As former employees of UC Global, David Morales has access to the personal information of the witnesses including their home addresses. As a result one of the witnesses is currently living away from home in another location for fear of reprisals.

19. Both believe, a view that I myself share, that if their identity was to become public it could expose the witnesses and their families to risk of violence by David Morales himself or those associated with him. I have made a number of enquiries which suggest that UC Global and the organisation that employed the company in the relevant period, Las Vegas Sands, have extensive resources worldwide according to witnesses. There are clearly other people and organisations that could be directly affected as a result of the exposing of illegal activity. As a result the potential for retaliation or actions designed to prevent the witnesses continuing to give evidence extends far beyond David Morales, not only to the organisation Las Vegas Sands but also to individuals such as Zohar Lahav, an individual identified by the witnesses as a former head of security for the company who was a close associate and friend of David Morales. Zohar Lahav is believed to have security background and extensive contacts worldwide according to the witnesses.

20. I am making this statement to set out the reasons why both witnesses are in fear of their identity being revealed. Although they have made statements in the extradition proceedings in the UK and are willing to give that evidence in these proceedings, they are aware the interest in their identities will become greater as a result of this and thus their anonymity remains essential.

21. I confirm that the witnesses, both Spanish speakers, have been informed of the entire contents of this statement and agree with the contents. In light of the deadline for submissions of evidence to Westminster Court individual statements made by the witnesses to confirm this will be translated from Spanish to English and provided separately as soon as is possible.

Signed: Aitor Martínez Jiménez

Date: 21/02/2020

Signed:

Signature witnessed by:

N