UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARGARET RATNER KUNSTLER,
DEBORAH HRBEK, JOHN GOETZ and
CHARLES GLASS,

                Plaintiffs,

      v.

CENTRAL INTELLIGENCE AGENCY,
MICHAEL R. POMPEO, DAVID
MORALES GUILLEN and UNDERCOVER
GLOBAL S.L.,

                Defendants.

No. 22 Civ. 6913 (JGK)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE GOVERNMENT'S MOTION TO DISMISS PLAINTIFFS' REMAINING CLAIM BASED ON THE STATE SECRETS PRIVILEGE AND STATUTORY PRIVILEGES**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street
New York, New York 10007
Tel. (212) 637-2679/2709
Email Jean-David.Barnea@usdoj.gov
       Sarah.Normand@usdoj.gov

JEAN-DAVID BARNEA
SARAH S. NORMAND
Assistant United States Attorneys
    - Of Counsel -

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................................2

    A.  The CIA Has Shown a Reasonable Danger that Disclosure of the Privileged Material Would Damage National Security ........................................................................................2

    B.  There Has Been No Official Acknowledgement Whether the CIA Was or Was Not Involved in the Activities Alleged in the Remaining Claim .................................................4

    C.  There Is No Alternative to Dismissal of the Remaining Claim ...........................................7

CONCLUSION ................................................................................................................................9

# TABLE OF AUTHORITIES

Page

**Cases**

*Al-Haramain Islamic Found., Inc. v. Bush,*
  507 F.3d 1190 (9th Cir. 2007) ................................................................................................ 5

*Doe v. CIA,*
  576 F.3d 95 (2d Cir. 2009) ................................................................................................. 2, 3

*El-Masri v. United States,*
  479 F.3d 296 (4th Cir. 2021) .................................................................................................. 8

*Hepting v. AT&T Corp.,*
  439 F. Supp. 2d 974 (N.D. Cal. 2006) .................................................................................... 5

*Kasza v. Browner,*
  133 F.3d 1159 (9th Cir. 1998) ................................................................................................ 2

*United States v. Reynolds,*
  345 U.S. 1 (1953) .................................................................................................................... 3

*United States v. Zubaydah,*
  595 U.S. 195 (2022) ........................................................................................................ passim

*Wikimedia Found. v. NSA,*
  14 F.4th 276 (4th Cir. 2021) ................................................................................................... 8

*Wilson v. CIA,*
  586 F.3d 171 (2d Cir. 2009) ............................................................................................. 4, 6

*Zuckerbraun v. Gen. Dynamics Corp.,*
  935 F.2d 544 (2d Cir. 1991) ........................................................................................... passim

**Statutes**

50 U.S.C. § 3024(i) ..................................................................................................................... 7

50 U.S.C. § 3507 ......................................................................................................................... 7

The CIA, by its attorney Damian Williams, the United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of its motion to dismiss the sole remaining claim in this action based upon the state secrets privilege and statutory privileges.[1]

As explained in the Government's opening brief, ECF No. 86 ("Mot."), CIA Director William J. Burns has amply justified his assertion of the state secrets and statutory privileges, and demonstrated that the remaining claim must be dismissed in light of them. Plaintiffs' arguments to the contrary, ECF No. 91 ("Opp."), must be rejected. Director Burns applied the correct standard in asserting the state secrets privilege and explained—principally in his classified declaration—why either confirming or denying that the CIA has information implicated by the remaining claim reasonably could be expected to cause serious, and, in some cases, exceptionally grave, damage to national security.

There has further been no official Government acknowledgement confirming or denying any CIA involvement in the alleged circumstances giving rise to the remaining claim. In any event, none of the non-government sources cited by Plaintiffs substantiate their remaining claim: that the CIA allegedly directed the Spanish Defendants to copy the contents of Plaintiffs' electronic devices when they visited Julian Assange at the Ecuadorian Embassy in London. Nor should the filing of this motion or assertion of the state secrets privilege be construed as conceding in any way that the CIA ever possessed the contents of Plaintiffs' electronic devices.

Finally, the successful assertion of the state secrets privilege in this case requires dismissal of the remaining claim. Director Burns explains that the privilege encompasses even admitting whether or not the CIA has information about this claim or its underlying allegations.

---

[1] This memorandum uses abbreviations and capitalized terms defined in the Government's opening brief.

It is thus impossible, as Plaintiffs propose, to segregate any potential privileged information from unprivileged information relating to this case.

## ARGUMENT

### A. The CIA Has Shown a Reasonable Danger that Disclosure of the Privileged Material Would Damage National Security

As explained in the Government's opening brief, Director Burns properly asserted the state secrets privilege and established "a reasonable danger that disclosure of the particular facts in litigation will jeopardize national security." *Doe v. CIA*, 576 F.3d 95, 104 (2d Cir. 2009) (quoting *Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 546-47 (2d Cir. 1991)); Mot. at 7-8.

As a preliminary matter, Plaintiffs incorrectly claim the Director invoked the wrong standard in support of his privilege assertion—that he simply stated the information at issue was classified, not why its release would damage national security. *See* Opp. at 2-3. But Director Burns averred *both* that he "assert[s] the state secrets and statutory privileges to protect and preserve vital, *classified* intelligence information," Public Burns Decl. ¶ 12 (emphasis added), *and* that he has "determined that either admitting or denying that CIA has information implicated by the remaining allegations in the Amended Complaint reasonably could be expected to cause serious—and in some cases, exceptionally grave—*damage to the national security of the United States*," *id.* ¶ 9 (emphasis added). And while the state secrets privilege can also apply to unclassified information, *see Kasza v. Browner*, 133 F.3d 1159, 1168-70 (9th Cir. 1998), information is properly classified "only if . . . unauthorized disclosure of the information reasonably could be expected to result in damage to the national security," among other requirements, Exec. Order No. 13526, § 1.1(a)(4), 75 Fed. Reg. 707 (Jan. 5, 2010). It is thus not

surprising that the state secrets privilege is often asserted over classified information. *See, e.g.*, *Doe*, 576 F.3d at 99.

Plaintiffs are also incorrect in contending that Director Burns did not explain what national security damage would ensue from the release of any information implicated by the remaining claim. *See* Opp. at 3, 8-10. The Director's classified declaration details why requiring the CIA to confirm or deny whether it has any information relating to the remaining claim would damage national security. The Court thus has ample information to conclude there is a "reasonable danger" that requiring the CIA to confirm or deny whether or not it has information about Plaintiffs' remaining claim would harm national security, particularly given the "utmost deference" owed to the Director's judgment in this regard. *United States v. Reynolds*, 345 U.S. 1, 10 (1953); *Zuckerbraun*, 935 F.2d at 546; *see also Doe*, 576 F.3d at 99 (affirming CIA's assertion of state secrets privilege "over the classified information described in a supplementary classified declaration" (quotation marks and brackets omitted)).

Nor is it surprising that acknowledging whether the CIA undertook certain intelligence-gathering activities in a foreign embassy abroad could have serious or exceptionally grave national security ramifications for the United States, even though Assange is no longer at the Embassy and UC Global no longer provides security services there. *See* Opp. at 9-10. The CIA Director has explained in his classified declaration the basis for his determination that disclosure would be harmful. *See United States v. Zubaydah*, 595 U.S. 195, 207-08 (2022) (upholding state secrets assertion with respect to location of former CIA detention site, despite the passage of time and the cessation of the CIA detention and interrogation program, based on CIA Director's determination that disclosure could still cause harm).[2] That determination is also entitled to the

---

[2] Plaintiffs illogically contend that this case could not implicate the types of "sensitive relationships with other nations" that the *Zubaydah* Court found dispositive, because their

Court's utmost deference, *Zuckerbraun*, 935 F.2d at 546, and cannot be defeated by Plaintiffs' mere speculation.

### B. There Has Been No Official Acknowledgement Whether the CIA Was or Was Not Involved in the Activities Alleged in the Remaining Claim

Plaintiffs' principal argument—that there is no "secret" for the CIA to protect in light of various non-governmental statements relating to Assange and the Embassy, *see* Opp. at 3-7—fails because unauthorized disclosures of any classified information does not render the information unclassified. In addition, there has been no official acknowledgment of whether the CIA was or was not involved in, or even has any information relating to, the alleged activities at issue. *See* Mot. at 10 n.5; Public Burns Decl. ¶ 10. There is "a critical difference between official and unofficial disclosures of information classified by the CIA." *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009) (quotation marks omitted); *see also id.* ("[T]he law will not infer official disclosure of information classified by the CIA from (1) widespread public discussion of a classified matter; (2) statements made by a person not authorized to speak for the Agency; or (3) release of information by another agency, or even by Congress." (citations omitted)).

Indeed, in *Zubaydah*, the Supreme Court upheld the CIA Director's assertion of the state secrets privilege to prevent former CIA contractors from confirming whether a foreign country had cooperated with the CIA, despite widespread statements from "publicly available sources" outside the U.S. Government. 595 U.S. at 201. These sources included the European Court of Human Rights, which suggested the CIA's possible involvement in a particular facility in that

---

complaint contains no allegations "related to any relationships between the CIA and other nations or foreign intelligence services," but only to the CIA's purported relationship with UC Global, a "*private company*" that was put "in charge of security at the embassy." Opp. at 7. But the Plaintiffs can only speculate as to whether the CIA's intelligence sources, methods and/or activities in a foreign embassy abroad would implicate the United States' relationships with other nations.

country.  *Id.* at 202.  Observing that "sometimes information that has entered the public domain may nonetheless fall within the scope of the state secrets privilege," the Court sustained the privilege considering the national security harms that would result from publicly acknowledging whether the CIA had relationships with particular foreign governments and intelligence services. *Id.* at 207-08.[3]  Similarly here, the CIA has never officially acknowledged whether it has information relating to Plaintiffs' remaining claim, and indeed has stated that doing so would harm national security.  Public Burns Decl. ¶ 9.

       The materials Plaintiffs reference are far from any official disclosure of the privileged information.  Plaintiffs cite a U.K. court decision that describes two anonymous witnesses, who were allegedly employed by UC Global and gave statements to a notary in connection with a Spanish legal proceeding.  *See* Opp. at 5 (citing Quille Decl., Ex. 4, ECF No. 91-4, ¶¶ 70-71).  Plaintiffs also reference a German television interview with an attorney for UC Global's owner.  *See id.* at 6.  As a threshold matter, these statements do not support Plaintiffs' remaining claim: that the CIA allegedly directed the Spanish Defendants to search Plaintiffs' electronic devices when they visited Assange at the Embassy.  The uncorroborated and anonymous statements from a foreign proceeding relate principally to a possible alleged relationship between the CIA and the Spanish Defendants, and to claims this Court has already dismissed, such as the alleged surveillance of Assange and his visitors and the copying of visitors' passports.  *See* December 19 Order at 17-23.  The only statement that purports to address the alleged copying of the contents

---

[3] *Cf. Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 987, 994-95 (N.D. Cal. 2006) (concluding the Government could not assert state secrets privilege over existence of surveillance program publicly acknowledged by the President and Attorney General, but leaving open possibility that the privilege would protect specific details of the program); *see also Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1197-1204 (9th Cir. 2007) (upholding assertion of the state secrets privilege over particular document notwithstanding official acknowledgment of same surveillance program).

of an electronic device concerns a person other than the Plaintiffs, of unspecified nationality, whose iPad may have been "illicitly copied" by someone, but without any indication as to whether any such alleged copying was supposedly done at the CIA's behest or whether the allegedly copied files were provided to the CIA.  Opp. at 5 (quoting Quille Decl., Ex. 4, ¶ 71).  Meanwhile, in the cited television interview, the attorney for UC Global's owner *did not* mention the CIA specifically, and specifically denied that the company worked with U.S. intelligence in the circumstances relating to Plaintiffs' remaining claim.[4]

Even if the cited statements supported the remaining claim, however, they would be immaterial because they are not official CIA statements, and thus whether the underlying allegations are true remains properly classified and privileged.  *See Wilson*, 586 F.3d at 186 (requiring "an official and documented disclosure" by the agency (quotation marks omitted)).  Nor, contrary to Plaintiffs' argument, are the anonymous witness statements those of U.S. government "insiders" akin to the acknowledged former CIA contractors whose testimony was sought in the *Zubaydah* litigation.  Opp. at 6.  The statements of individuals who claim to be former employees of UC Global—a company with which the CIA has never acknowledged any relationship—could never be confused with official statements of the U.S. government.  In contrast, the individuals whose testimony was sought in *Zubaydah* "worked directly for the CIA

---

[4] Plaintiffs misleadingly omit the most pertinent portion of the cited interview statement.  *Compare* Opp. at 6 (quoting attorney as stating "I have already said that UC Global has worked with the U.S. intelligence service multiple times."), *with* NDR, Panorama, *Who Spied on Julian Assange?* at 4:45 (Dec. 3, 2019), https://www.youtube.com/watch?v=qfWoIAsIn6Y (full relevant response is: "I have already said that UC Global has worked with the U.S. intelligence service multiple times, *but not in this specific case*," referring to the Ecuadorian Embassy (emphasis added)) (last visited June 13, 2024).  Notably, there are eighteen agencies or departments—or elements thereof—that comprise the U.S. Intelligence Community.  *See* Off. Dir. Nat'l Intel., *How the IC Works*, https://www.intelligence.gov/how-the-ic-works#our-organizations (last visited June 13, 2024).

as contractors," and thus if they were compelled to testify, "their confirmation (or denial) of the information Zubaydah seeks would be tantamount to a disclosure from the CIA itself." 595 U.S. at 971.

As the Supreme Court has explained, official government confirmation "is different in kind from speculation in the press *or even by foreign courts* because it leaves virtually no doubt as to the veracity of the information that has been confirmed." *Zubaydah*, 595 U.S. at 208 (emphasis added). The Court cited with approval the decisions of lower courts concluding that "official confirmation of sensitive information may pose risks that unofficial disclosure does not." *Id.* at 210; *see id.* at 210-11 ("It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so. Official confirmation may dispel lingering doubts or reveal that the information currently in the public domain is incomplete or itself a cover story." (citations and quotation marks omitted)).

Given the lack of CIA official acknowledgment as to whether or not it possesses any information relating to the remaining claim in this case—and the substantial showing by Director Burns of the national security damage that would result from providing any such statement—this Court should uphold the CIA's invocation of the state secrets privilege.

### C. There Is No Alternative to Dismissal of the Remaining Claim

The Government previously explained why the Director's assertion of the state secrets privilege requires dismissal of the remaining claim. *See* Mot. at 12-15.[5] Contrary to Plaintiffs'

---

[5] The Director has also asserted statutory privileges to protect this information. Public Burns Decl. ¶ 8 (citing 50 U.S.C. §§ 3024(i), 3507). While no court has had occasion to dismiss a case solely based on these statutory privileges, *see* Opp. at 12-13, that is because courts have found it unnecessary to consider the effect of these privileges where, as here, dismissal is required under the state secrets privilege, *see* Mot. at 16-17 (collecting cases).

conjecture, it is not possible to "segregate nonprivileged information," Opp. at 8; *see also id*. at 10-12, and allow the case to proceed.

The Director's privilege assertion broadly encompasses whether the CIA has any information relating to the Plaintiffs' remaining claim. *See* Public Burns Decl. ¶¶ 9-10. In the absence of the privileged information, factual questions concerning liability "cannot be resolved or even put in dispute without access to" information that is "in its entirety classified and subject to the claim of privilege," and there is "no evidence available" for either Plaintiffs to attempt to establish a prima facie case or the CIA to mount a valid defense. *Zuckerbraun*, 935 F.2d at 547; *Wikimedia Found. v. NSA*, 14 F.4th 276, 304 (4th Cir. 2021) ("There's simply no conceivable defense to [plaintiff's claim] that wouldn't also reveal the very information that the government is trying to protect . . . ."). Moreover, any litigation of the remaining claim risks disclosure of the privileged information. *See* Public Burns Decl. ¶ 14. Any answer to the relevant paragraphs of the amended complaint, and any response to anticipated discovery requests, would reveal the privileged information the CIA is trying to protect. *See* Mot. at 13; *El-Masri v. United States*, 479 F.3d 296, 308-10 (4th Cir. 2021) (dismissal necessary where "virtually any conceivable response to [the plaintiff's] allegations would disclose privileged information," and thus the case could not be "litigated without threatening the disclosure of . . . state secrets").

Plaintiffs' suggestion that the Court could avoid dismissal simply by cabining discovery, Opp. at 8, 10-11, ignores the fact that the very subject matter of the litigation—whether or not the CIA engaged in the conduct alleged in the remaining claim—is itself privileged. No matter how discovery is structured, any response by the CIA to the remaining claim would risk disclosure of privileged information. *See Zubaydah*, 595 U.S. at 213-14 (rejecting argument that court could use "protective orders and code names" to enable CIA contractors to provide

8

information about Zubaydah's treatment in custody "without reference to geography," as "any response to [the] requests would inevitably tend to confirm or deny whether the CIA operated a detention site" in the foreign country at issue). Dismissal is therefore required. *See Zuckerbraun*, 935 F.2d at 547 (dismissal required where the subject matter of the case is a state secret).

## CONCLUSION

For the foregoing reasons, and the reasons detailed in the Government's opening papers, the Court should uphold the CIA Director's assertion of the state secrets privilege and statutory privileges and dismiss Plaintiffs' remaining claim in this case.

Dated: New York, New York
       June 14, 2024

>                          DAMIAN WILLIAMS
>                          United States Attorney for the
>                          Southern District of New York
>
> By:      s/*Jean-David Barnea*
>          JEAN-DAVID BARNEA
>          SARAH S. NORMAND
>          Assistant United States Attorneys
>          86 Chambers Street, 3rd Floor
>          New York, NY 10007
>          Tel. (212) 637-2679/2709
>          Email Jean-David.Barnea@usdoj.gov
>                 Sarah.Normand@usdoj.gov

9

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that the Government's reply memorandum of law complies with the word limits and formatting rules in Section II.D of this Court's Individual Practices. As measured by the word processing system used to prepare the Government's memorandum of law, there are 2747 words in this reply memorandum.

                                                DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:     s/*Jean-David Barnea*
JEAN-DAVID BARNEA
Assistant United States Attorney